**In re Dale WORKS.**

**No. 06–03–00120–CV.**

Court of Appeals of Texas, Texarkana.

Submitted Oct. 16, 2003.

Decided Oct. 17, 2003.

Clarice Attaway Allen, Texarkana, for relator.

E. Ben Franks, Franks & Grimes, Texarkana, for real party of interest.

John F. Miller, Jr., New Boston, for respondent.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

In this original proceeding, Dale Works seeks a writ of mandamus directing the trial court to (1) withdraw an August 27, 2003, order denying Works' motion to disqualify attorney Ben Franks as opposing counsel, (2) enter an order granting Works' motion to disqualify Franks as opposing counsel, and (3) enter an order prohibiting Franks from communicating any privileged information to the new counsel. Based on the record and pleadings before us, and without hearing oral argument, we deny the petition.

## I. Factual and Procedural Background

Raymond and Delores Head married in 1996. On August 25, 1997, as they were walking down a street in Texarkana, Texas, Raymond and Delores were struck from behind by a car operated by Linda Burks, an employee of Budget Rent–A–Car. Raymond and Delores sued both Budget Rent–A–Car and Burks (collectively "Budget") for injuries they suffered in the accident. Franks represented both Raymond and Delores in the suit. According to Delores' testimony, Raymond's claims against Budget were resolved first, and it was not until later that Delores settled her claims against the company. This, according to Delores, resulted in two separate settlements: one for Raymond, and one for herself.

On Thursday, February 13, 2003, Raymond died. His survivors include Delores, two daughters, Marla Hohner[1] and Lori Tally, and a grandchild, Clayton Tally. In the copy of the will submitted for probate, Raymond named Works as the executor of his estate. The copy of the will seeks to devise Raymond's estate to his daughters and grandson, but makes no provision for Delores.

Delores filed a contest to the will. Delores chose Franks, the attorney who rep-

---

1. The will refers to a daughter named "Marla Armstrong." The daughter who testified at the hearing is Marla Hohner. We assume these are the same person.

resented her in the suit against Budget, as counsel of record in the will contest. In response, Works sought to have Franks disqualified on the basis that Franks' prior representation of Raymond is adverse to Delores' claims against Raymond's estate. Works also announced his plan to call Franks as a material witness in its defense of the will. Works contends Franks structured Raymond's and Delores' settlements separately pursuant to a premarital agreement. Franks' knowledge of a premarital agreement, according to Works, makes him an essential fact witness in the will contest. Should Works, as executor of the estate, not be able to bring forth a copy of the premarital agreement, and if the copy of the will submitted for probate is not approved by the probate court, Works hopes to show that Delores and Raymond nonetheless had a premarital agreement and that, therefore, Delores should receive none of Raymond's property that might otherwise be considered community property in the event Raymond died intestate.

The trial court denied the estate's motion to disqualify Franks. Works now asks us to disqualify Franks as Delores' counsel.

## II. The Applicable Standards

### A. Mandamus Relief

Mandamus will issue only when the mandamus record establishes (1) a clear abuse of discretion or the violation of a duty imposed by law, and (2) the absence of a clear and adequate remedy at law. *Cantu v. Longoria*, 878 S.W.2d 131, 132 (Tex.1994); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). Mandamus is an extraordinary remedy that will issue only to correct a clear abuse of discretion or, in the absence of another statutory remedy, when the trial court fails to observe a mandatory provision conferring a right or forbidding a particular action. *Abor v.*

*Black*, 695 S.W.2d 564, 567 (Tex.1985). Mandamus may issue even on questions of first impression if, as a matter of law, the trial court erred in its analysis and reached an erroneous legal conclusion. *Huie v. DeShazo*, 922 S.W.2d 920, 927–28 (Tex.1996).

### B. Attorney Disqualification

A party seeking to disqualify an attorney must show the existence of a prior attorney-client relationship "in which the factual matters were so related to the facts in the pending litigation that it creates a genuine threat that confidences that were revealed to the former attorney will be revealed by that attorney to its present adversary." *In re Cap Rock Elec. Coop., Inc.*, 35 S.W.3d 222, 230 (Tex.App.-Texarkana 2000, orig. proceeding). This "substantial relationship" test is a product of common law and predates the Texas Rules of Disciplinary Conduct for attorneys. *Id.* When seeking disqualification, "[t]he movant has the burden of producing evidence of such specific similarities capable of being recited in the disqualification order." *Id.*

## III. Analysis

In the case now before us, the parties have supplied documents from the Budget lawsuit, transcripts of hearings on two separate motions to disqualify Franks, and documents related to the probate proceedings. The parties agree that Franks previously worked as Raymond's attorney in Raymond's claims against Budget. The parties disagree, however, on whether the substance of that prior lawsuit (and any information garnered from Franks' representation of Raymond during that period) bears a substantial relationship to the substance of the will contest.

Texas courts have often looked to the disciplinary rules to decide disqualification

issues. *In re Meador,* 968 S.W.2d 346, 350 (Tex.1998). While the disciplinary rules are merely guidelines, not controlling standards, for court-ordered disqualification, the rules do provide reasonable guidance— even in cases where an attorney may not have clearly violated one of its canons. *Id.* at 351; *see also In re Bahn,* 13 S.W.3d 865, 872 (Tex.App.-Fort Worth 2000, orig. proceeding) (quoting Rule 3.08 extensively). Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct states:

(a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;

(3) the testimony relates to the nature and value of legal services rendered in the case;

(4) the lawyer is a party to the action and is appearing pro se; or

(5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

Tex. Disciplinary R. Prof'l Conduct 3.08, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9).

In this case, Works has made clear he intends to call Franks as a material fact witness. The substance of the expected testimony concerns whether Raymond and Delores had a valid premarital agreement that would prevent Delores from claiming a portion of Raymond's estate as community property in the event the trial court determined Raymond died intestate. The record before us, however, does not demonstrate that Franks' prior representation of both Raymond and Delores is substantially related to his representation of Delores in the will contest.

First, the factual substance of Franks' prior attorney-client relationship with Raymond concerned injuries Raymond sustained in a motor vehicle-pedestrian accident. The substance of the present suit concerns the proper division of Raymond's estate. The bases of the two suits are not the same. Further, because Franks jointly represented Raymond and Delores, there is no threat that "confidences that were revealed to the former attorney will be revealed by that attorney to its present adversary." *See Cap Rock Elec. Coop., Inc.,* 35 S.W.3d at 230. Any confidences between Raymond and Franks are assumed to have been revealed to Delores in 1998 as a result of Franks' joint representation. *Cf.* Tex.R. Evid. 503(d)(5) (no attorney-client privilege for communications relevant to parties of joint representation if communication was made by any of them when subsequently offered in action between the former joint clients). Thus, the fear of disclosure of confidential information to an adverse party is a moot issue: any such information has already been disclosed to Delores, who is free to disclose it to Franks, another attorney, or anyone she so chooses.

Second, Works has not provided this Court with a copy of any premarital agreement between Delores and Raymond. Not all premarital agreements remove the couple's entire marital estate from Texas' community property laws. Many, if not most, assuredly do. Some premarital agreements, however, only purport to re-

move certain items of the marital estate (i.e., gains from the sale of stock in the person's premarriage portfolio, or employee pension contributions and/or benefits) from the community property laws. Assuming, *arguendo*, that Raymond and Delores had a premarital agreement, it is impossible to understand its scope without having the actual agreement before us. Nor would it be proper for us to speculate as to either the contents of an unseen premarital agreement or its impact on whether Franks would be a material witness regarding the agreement's effect on the division of Raymond's estate.

Third, none of the witnesses who testified regarding disqualification affirmatively testified they had personal knowledge of a premarital agreement between Raymond and Delores. Instead, the testimony before the trial court on the subject consisted of hearsay and innuendo. The trial court sustained objections to much of the hearsay testimony. The remaining evidence consisted of testimony regarding conversations Delores had with Works over several days shortly after Raymond's death. Works claims Delores admitted she knew she had signed a premarital agreement with Raymond. Works also contends the premarital agreement precludes her from receiving any of Raymond's property. Delores testified she unwittingly misled Works into thinking she and Raymond had a premarital agreement when, in fact, she was only agreeing with anything Works

said so that he would leave her alone and so that she could focus on grieving for Raymond. This testimony, if believed, would be a reasonable explanation of what might otherwise be seen as admissions on a key fact in this case. Thus, on the meager record before us, it would be a stretch for us to say that the record mandates that the trial court disqualify Franks.

Fourth, there is no evidence before us that Franks drafted either the alleged premarital agreement or the copy of the will submitted for probate. In fact, Delores testified the document she signed before marrying Raymond was something she believed had been drafted by an attorney named Don Friedman. Except in narrow circumstances not applicable here, the Texas Rules of Disciplinary Procedure do not prohibit Franks from representing Delores' challenge to the validity of Friedman's work product.[2]

Fifth, Franks repeatedly told the trial court he did not draft any alleged premarital agreement between Raymond and Delores. This testimony, if believed, would directly contradict the estate's contention that Franks should be disqualified because Delores' claims against the estate represent a challenge to Franks' prior work product on Raymond's behalf. Thus, we cannot say the trial court abused its discretion by siding with one version of the evidence, rather than the opposite version.

**2.** Throughout his pleadings on behalf of the estate, Works contends Delores is seeking to dispute how Franks structured the 1998 settlement agreements with Budget. We disagree with this characterization of the proceedings. Delores' claims in the will contest, if successful, may result in her receipt of monies traceable to Raymond's 1998 settlement with Budget, but the same will not result in the undoing of the 1998 settlements. Nor will Delores' success in the present contest necessarily result in either herself or Bud-

get interpreting the substance of the 1998 settlement agreements; nor do we foresee the prospect of a successful will contest diminishing the efficacy of the 1998 settlement agreements. Those settlements, regardless of the outcome of the litigation at issue in this case, will remain enforceable between Budget and Delores and between Budget and Raymond's estate. Accordingly, we do not agree that Delores' claims in the will contest equate a challenge to the viability of Franks' work product in the lawsuits against Budget.

Sixth, whether, in 1998, Franks may have structured Raymond's and Delores' settlements in accordance with a premarital agreement bares no direct impact on whether such agreement still existed in 2003. It is possible, assuming, *arguendo,* a premarital agreement existed, Raymond and Delores revoked such an agreement before Raymond's death. However, without first having proof of the premarital agreement, demonstrated by introducing the actual agreement or through testimony from a witness with personal knowledge of the agreement's existence and its contents, the trial court should not be required to presume the continued existence of a valid, binding premarital agreement or its contents.

## IV. Conclusion

Based on the record before us, we find the trial court did not abuse its discretion by denying Works' motion to disqualify counsel. The record fails to demonstrate that Franks' prior representation of Raymond bears such a substantial relationship to his adverse representation of Delores in the will contest that Franks should be disqualified in the present litigation. We deny the petition for writ of mandamus.