In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00102-CV


______________________________





IN RE: LESLIE GENE GOODMAN









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter








O P I N I O N



 Leslie Gene Goodman has filed a petition for writ of mandamus, asking this Court to order
the Honorable Jim D. Lovett, presiding judge of the Sixth Judicial District Court of Lamar County,
Texas, to enter an order disqualifying the Honorable Gary Young, county attorney for Lamar County,
as the State's attorney of record in trial court cause number 21313, styled State of Texas v. Goodman,
now pending in the Sixth Judicial District Court. The State contends we lack jurisdiction over this
matter. For the reasons set forth below, we disagree with the State's jurisdictional challenge. We
further conclude there is merit to Goodman's claim that Young should be disqualified--given the
discrete facts in the record before us. We, therefore, conditionally grant the petition.

I. The State's Jurisdictional Challenge

 Intermediate appellate courts in this State have original and appellate jurisdiction as provided
by law. Tex. Const. art. V, § 6. State law authorizes this Court to issue writs of mandamus against
judges of a district or county court within our appellate district. Tex. Gov't Code Ann. § 22.221(b)
(Vernon 2004). The State contends we lack jurisdiction over this matter because Goodman seeks
the recusal of an elected county attorney, not a district judge. See, e.g., In re Jones,
No. 06-03-00061-CV, 2003 Tex. App. LEXIS 3673 (Tex. App.--Texarkana Apr. 30, 2003, orig.
proceeding) (mem. op.). The State's jurisdictional argument misses its mark: Goodman is asking
us to direct the district judge--not the elected prosecutor--to perform a required, ministerial act. 
As the relief sought concerns a lower court's duty to perform a nondiscretionary act, we do have
original jurisdiction to review Goodman's petition. Accord Tex. Gov't Code Ann. § 22.221(b);
Palermo v. McCorkle, 838 S.W.2d 887 (Tex. App.--Houston [14th Dist.] 1992, orig. proceeding).

II. The Standard for Obtaining Mandamus Relief Regarding Attorney Disqualification

 "[M]andamus is a drastic remedy, to be invoked only in extraordinary situations." State
ex rel. Hill v. Pirtle, 887 S.W.2d 921, 926 (Tex. Crim. App. 1994). To permit the issuance of such
writs in less than extraordinary situations "would encourage piecemeal litigation and frustrate the
efficient administration of justice." Id. (quoting State ex rel. Sutton v. Bage, 822 S.W.2d 55, 57
(Tex. Crim. App. 1992) (orig. proceeding)). Mandamus will issue only when the mandamus record
establishes (1) a clear abuse of discretion or the violation of a duty imposed by law, and (2) the
absence of a clear and adequate remedy at law. Cantu v. Longoria, 878 S.W.2d 131 (Tex. 1994);
Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). An abuse of discretion occurs only when
the record affirmatively shows the trial court "acted without reference to any guiding rules or
principles, or acted in an arbitrary or unreasonable manner." Metro. Life Ins. Co. v. Syntek Fin.
Corp., 881 S.W.2d 319, 321 (Tex. 1994). "A prosecutor is 'disqualified' from a case if he is barred
by law from conducting the prosecution." Edward L. Wilkinson, Conflicts of Interest in Texas
Criminal Cases, 54 Baylor L. Rev. 171, 173-74 (2002). A trial court may not disqualify a district
attorney on the basis of a conflict of interest unless that conflict rises to the level of a due-process
violation. Id. at 175 (referencing Pirtle, 887 S.W.2d at 927). 

 Under both statute and case law, a court can and should disqualify the district
attorney from representing the State in cases in which the district attorney once
represented the defendant in the matter to be tried. A defendant's due process rights
are violated when an attorney represents a client and then participates in the
prosecution of that client in the same matter or another matter with a substantial
relationship to the first. 

Id. at 176-77 (footnotes omitted). A trial court's authority to disqualify a prosecutor comes from the
court's duty to protect the accused's constitutional due-process rights, see, e.g., Ex parte Morgan, 616
S.W.2d 625, 626 (Tex. Crim. App. 1981) (orig. proceeding), and the statute barring prosecutors from
representing the State in the same matter for which he or she has been previously employed
adversely, see Tex. Code Crim. Proc. Ann. art. 2.01 (Vernon 2005).

 A party seeking to disqualify an attorney must show the existence of a prior attorney-client
relationship "in which the factual matters were so related to the facts in the pending litigation that
it creates a genuine threat that confidences that were revealed to the former attorney will be revealed
by that attorney to its present adversary." In re Cap Rock Elec. Coop., Inc., 35 S.W.3d 222, 230
(Tex. App.--Texarkana 2000, orig. proceeding). When seeking disqualification, "[t]he movant has
the burden of producing evidence of such specific similarities capable of being recited in the
disqualification order." Id.; see also Metro. Life Ins., 881 S.W.2d at 320-21.

 A trial court may not disqualify a prosecutor on the basis of a conflict of interest unless that
conflict rises to the level of a due-process violation. Pirtle, 887 S.W.2d at 927. Goodman has
claimed before both the trial court and this Court that his due-process rights will be violated if Young
is himself permitted to prosecute the underlying criminal charge.

III. Background, Applicable Law, and Analysis of Goodman's Issue

 A. Factual and Procedural Background

 The State has charged Goodman with driving while intoxicated (DWI)-subsequent offense. 
See Tex. Penal Code Ann. § 49.04 (Vernon 2003) (defining offense) and Tex. Penal Code Ann.
§ 49.09 (Vernon Supp. 2006) (providing for enhanced penalties for repeat offenders). The State has
alleged two misdemeanor, jurisdictional convictions: first, that Goodman was convicted of DWI in
Delta County cause number 9667 on February 28, 1997; and, second, that he was convicted in Lamar
County cause number 18802 on September 12, 2000. The record before us indicates Young, before
becoming the elected county attorney, (1) represented Goodman in cause number 18802, one of the
convictions the State now proposes to use to enhance Goodman's potential sentence, should he be
found guilty. (2) The indictment for Goodman's current felony charge also alleges Goodman has been
twice previously convicted of a felony offense, further raising the available punishment range to
between twenty-five and ninety-nine years' imprisonment, or imprisonment for life. See Tex. Penal
Code Ann. § 12.42(d) (Vernon Supp. 2006).

 The record before us shows Young submitted a bill to the Lamar County district clerk's office
for 8.49 hours of work Young completed in cause number 18802, State vs. Goodman. That bill,
dated September 12, 2000 (the date of Goodman's conviction in cause number 18802), lists five
separate conferences Young had with Goodman during the course of their four-month-long attorney-client relationship. The trial court's judgment in cause number 18802 also lists Young as Goodman's
attorney of record, and Young's signature appears on the plea paperwork associated with the
judgment in that case. 

 At the hearing on the motion to disqualify Young, Goodman testified he was represented by
Young in one of the DWI cases now being used by the State for a jurisdictional enhancement. 
Goodman also testified that, during the course of that association with Young, Goodman disclosed
confidential information about himself and about the facts of that case. Goodman testified that he
discussed with Young the "alcohol issue." In fact, the following exchange took place during
Goodman's testimony: 

 Q. [By the State] Your alcohol issues are a matter of public record.


 A. [Goodman] I don't believe that how many beers I drink a day is a
public record.


 Q. Did you tell that to Mr. Young?


 A. Yes.


This testimony is undisputed. Additionally, Goodman told the trial court that he has not given
Young permission to prosecute the current charge, nor has he waived any other rights he has
concerning his preexisting attorney-client relationship with Young. Goodman expressed a fear that
Young would use those confidential communications--specifically those regarding how much
Goodman drank on a daily basis--against the accused during the trial of the current charges. 

 Young testified that he is the elected county attorney of Lamar County, but previously
worked as a criminal defense attorney in private practice. Young admitted he has not received
permission from Goodman to prosecute the latter. Young opined that he does not have a conflict of
interest because Goodman had not made an attempt to attack the validity of any of his previous DWI
convictions. 

 B. The Texas Disciplinary Rules of Professional Conduct Provide Guidance

 As a member of the State Bar of Texas, Young is subject to the Texas Disciplinary Rules of
Professional Conduct. Texas courts have often looked to these disciplinary rules to decide
disqualification issues. See, e.g., In re Meador, 968 S.W.2d 346, 350 (Tex. 1998); In re Works, 118
S.W.3d 906, 908-09 (Tex. App.--Texarkana 2003, orig. proceeding). While the disciplinary rules
are merely guidelines for court-ordered disqualification (rather than controlling standards), these
rules do provide reasonable guidance--even in cases where an attorney may not have clearly violated
one of the disciplinary rules. In re Epic Holdings, Inc., 985 S.W.2d 41, 48 (Tex. 1998); Meador, 968
S.W.2d at 351; see also Gonzalez v. State, 117 S.W.3d 831, 837-38 (Tex. Crim. App. 2003) (using
Tex. Disciplinary R. Prof'l Conduct 3.08 as guideline); House v. State, 947 S.W.2d 251, 252-53
(Tex. Crim. App. 1997) (citing Rule 3.08, cmt. 10, which states: "this rule may furnish some
guidance"); Anderson Producing, Inc. v. Koch Oil Co., 929 S.W.2d 416, 421 (Tex. 1996); Works,
118 S.W.3d at 908-09; In re Bahn, 13 S.W.3d 865, 872 (Tex. App.--Fort Worth 2000, orig.
proceeding).

 The Sixth Amendment to our Federal Constitution guarantees a number of rights to the
accused in a criminal proceeding. Not the least of these rights is the right to counsel. U.S. Const.
amend. VI; Gideon v. Wainwright, 372 U.S. 335 (1963) (right to counsel in all felony cases);
Argersinger v. Hamlin, 407 U.S. 25 (1972) (right to counsel in jailable misdemeanor cases). 
Professor Susette M. Talarico has written, "The assistance of counsel, more than any other dimension
of due process, evokes general American support for fair play and reflects the centrality of attorneys
in the adversarial tradition of Common Law Countries." Susette M. Talarico, Right to Counsel in
The Oxford Companion to the Supreme Court of the United States 229, 230 (Kermit L. Hall
ed., 2005). 

 "The central aim of due process doctrine is to assure fair procedure when the government
imposes a burden on an individual," writes Professor Sargentich of American University's
Washington College of Law. "The doctrine seeks to prevent arbitrary government, avoid mistaken
deprivations, allow persons to know about and respond to charges against them, and promote a sense
of the legitimacy of official behavior." Thomas O. Sargentich, Procedural Due Process in The
Oxford Companion to the Supreme Court of the United States 273, 274. But due process
"is not a technical conception with a fixed content unrelated to time, place and circumstances." 
Mathews v. Eldridge, 424 U.S. 319, 334 (1976). Instead, the United States Supreme Court has
instructed that the 

 identification of specific dictates of due process generally requires consideration of
three distinct factors: First, the private interest that will be affected by the official
action; second, the risk of an erroneous deprivation of such interest through the
procedures used, and the probable value, if any, of additional or substitute procedural
safeguards; and finally, the Government's interest, including the function involved
and the fiscal and administrative burdens that the additional or substitute procedural
requirement would entail. 


Id. at 335.

 Rules 1.05 and 1.09 of the Texas Rules of Disciplinary Procedure are pertinent to Young's
prior and current representation in the proceeding now before this Court. Rule 1.05 provides that,
with certain exceptions not applicable here,

[A] lawyer shall not knowingly . . . (2) [u]se confidential information of a client to
the disadvantage of the client unless the client consents after consultation [or]
(3) [u]se confidential information of a former client to the disadvantage of the former
client after the representation is concluded unless the former client consents after
consultation or the confidential information has become generally known.

Tex. Disciplinary R. Prof'l Conduct 1.05(b), reprinted in Tex. Gov't Code Ann., tit. 2, subtit.
G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9). Rule 1.09 concerns conflicts of interest:

Without prior consent, a lawyer who personally has formerly represented a client in
a matter shall not thereafter represent another person in a matter adverse to the
former client . . . if the representation in reasonable probability will involve a
violation of Rule 1.05; or . . . if it is the same or a substantially related matter.

Tex. Disciplinary R. Prof'l Conduct 1.09(a), reprinted in Tex. Gov't Code Ann., tit. 2, subtit.
G app. A (Vernon 2005).

 C. An Attorney May Not Prosecute a Former Client in the Same Case in Which the
Attorney Represented That Client


 An attorney may not represent the State when the matter being prosecuted is the same matter
for which that attorney previously represented the accused. Morgan, 616 S.W.2d at 626; see also
Tex. Comm. on Prof'l Ethics, Op. 538, 64 Tex. B.J. 698 (2001) (discussed further below). In such
a situation, "there exists the very real danger that the district attorney would be prosecuting the
defendant on the basis of fact acquired by him [or her] during the existence of his [or her] former
professional relationship with the defendant. Use of such confidential knowledge would be a
violation of the attorney-client relationship and would be clearly prejudicial to the defendant." Id.
(referencing Gajewski v. United States, 321 F.2d 261 (8th Cir. 1963)). In Morgan, Texas' highest
criminal court found that an attorney who had formerly represented a defendant at trial (in which the
defendant received a probated sentence) was prohibited from subsequently representing the State at
a hearing regarding the revocation of that same defendant's probated sentence in the case for which
that attorney had represented the defendant. Morgan, 616 S.W.2d at 626. Such a conflict of interest
inherently rose to the level of a due-process violation. Id.

 Though Young is not representing the State in a revocation proceeding against Goodman in
the same case for which he previously represented Goodman, Young did serve as Goodman's
attorney in one of the cases now being used by the State to enhance Goodman's potential punishment
to the felony level. And the degree to which Goodman abuses alcohol--information the record
indicates Young learned during the scope of the prior representation--is of such an inherently similar
subject matter as what will be at issue for the current DWI charge that we believe there is a real and
substantial danger such information would be used to Goodman's disadvantage at trial, especially
during cross-examination of Goodman (should he testify) at guilt/innocence or punishment (where
such evidence inherently concerns Goodman's potential for rehabilitation). Morgan, therefore,
provides guidance.

 D. An Attorney May Also Be Barred from Adverse Representation at Other Times


 In 1998, the Texas Supreme Court reviewed an original proceeding in which several
defendants sought the disqualification of the plaintiff's attorneys. Epic Holdings, 985 S.W.2d at
43-44. The defendants alleged the plaintiff's lawsuit against them involved proceedings that were
"substantially similar" to the legal services previously provided to the defendants by the now adverse
attorneys. Id. The plaintiff's lawyers had previously helped draft the articles of incorporation for one
of the defendants, and one of the plaintiff's claims sought to attack the validity of the work
previously completed for the defendants. Id. at 50-51. Justice Hecht, writing for a 6-3 majority,
agreed disqualification was appropriate: 

 We have held that two matters are "substantially related" within the meaning
of Rule 1.09 when a genuine threat exists that a lawyer may divulge in one matter
confidential information obtained in the other because the facts and issues involved
in both are so similar. Such a threat exists here, when information Johnson & Gibbs
lawyers obtained from George and EPIC in 1988 may be relevant in the prosecution
of Anderson's claims. An actual disclosure of confidences need not be proven; the
issue is the existence of a genuine threat of disclosure because of the similarity of the
matters. 


Id. at 51 (footnotes omitted). Thus, the maxim we take from Epic Holdings is that, where a
subsequent matter is "substantially related," the attorney may also be prohibited from representing
a party adverse to the former client. See also Metro. Life Ins. Co., 881 S.W.2d at 320. This
"substantial relationship" test is a product of common law and predates the Texas Rules of
Disciplinary Conduct for attorneys. Cap Rock Elec. Coop., 35 S.W.3d at 230. 

 In 2001, the Texas Center for Legal Ethics and Professionalism was asked to address whether
"a lawyer, who is the newly elected district attorney, [is] prohibited from prosecuting a former client
in a new criminal proceeding." Tex. Comm. on Prof'l Ethics, Op. 538. While opinions of the Texas
Ethics Commission are advisory, rather than binding, authority, Opinion 538 directly addresses the
issues now before this Court and we find great logic in its reasoning. The opinion acknowledged
that, under Rule 1.09, an attorney is prohibited from representing a party adverse to a former client
if the matter then being litigated would be considered "substantially related" to the prior
representation. Id. "The 'substantially related' aspect primarily involves current proceedings where
a lawyer could have acquired confidential information in a previous representation that could now
be used to the former client's disadvantage or the advantage of a current client or some other person." 
Id. (referencing Comment 4, Rule 1.09). The ethics opinion then noted that "our confidentiality rules
are designed to encourage such free discussions with the added guarantee that confidentiality will
continue even after the attorney-client relationship is terminated," but allowing an elected district
attorney to prosecute a former client ultimately "undermine[s] our legal system." Id. (referencing
Comment 1 and 8, Rule 1.05). The only way the elected prosecutor could avoid an ethical conflict
would be if he or she proceeded cautiously, "ignoring any fact known by the new prosecutor about
the former client as a result of the former representation." Id. But, continued the ethics committee,
this is not an adequate solution: 

 Although a prosecutor has the responsibility to see that justice is done and not simply
be an advocate, Comment 1, Rule 3.09, the prosecutor is still obligated to act with
competence, commitment and dedication on the State's behalf. Comment 6, Rule
1.01. Adherence to the Rules places an impossible burden on an effective prosecutor
and creates an almost certain probability that in the adversarial trial setting,
confidentiality will be compromised. Similarly, to obtain and ensure protection, the
objecting former client is forced to divulge the very same confidential information
he seeks to prevent from disadvantageous use, thus defeating the purpose of the rules. 
These conflicting obligations impose conflicting duties on both the prosecutor and
the former client and thus requires [sic] prohibition of this practice, absent the former
client's consent. See Comment 7 to Rule 1.06.


Id. 

 The opinion also goes one step further--opining that an elected district attorney would be
prohibited from participating in a trial in which the elected district attorney used a prior conviction
as enhancement or punishment evidence, regardless of whether the prior conviction is for a matter
that is "substantially related" to the current proceeding. Id. As this latter situation requires no proof
of a "substantial relationship" between the prior representation and the current proceedings, yet
would nonetheless be prohibited, the opinion's ultimate resolution of this corollary issue only
undergirds our conclusion that the present case likewise cannot be permitted to go forward with
Young representing the State as an adversary to his former client.

 E. The Record Below Mandates But One Result: Young May Not Prosecute
Goodman


 Young, by virtue of his previous representation of Goodman, possesses confidential
information about Goodman regarding "the alcohol issue," specifically, how much alcohol Goodman
consumes on an average basis. Goodman has not waived Young's duty not to disclose the
confidences revealed during that prior presentation. 

 There is a real, genuine, and inherent danger that the State, with Young serving as its
representative, would use this confidential information in its prosecution of Goodman, especially
when the prior offense is being used as a felony jurisdictional enhancement and when the underlying
criminal offense is the same type of crime for which Young previously represented Goodman. If
Goodman chooses to testify during guilt/innocence, Young will be free to cross-examine the accused
about his pattern of alcohol use and abuse. See Tex. R. Evid. 611(b) (witness may be cross-examined about any matter relevant to any issue in the case). While this is true in all DWI
prosecutions, what is unique in this case is that Young already knows the proper and truthful
answers to such questions solely because he learned those answers during the scope of his prior
representation. See Tex. Comm. on Prof'l Ethics, Op. 538. The typical district attorney prosecuting
the average DWI case would not have such an advantage. Further, the fear of being cross-examined
by Young during guilt/innocence about these confidential disclosures may dissuade Goodman from
otherwise testifying in his own defense during guilt/innocence. And because the majority of DWI
prosecutions involve only two potential fact witnesses--the arresting police officer and the
accused--Goodman might well be foreclosed (as a practical matter) from offering any evidence in
his defense because the fear of being cross-examined potentially prohibits the testimony of the only
other witness capable of controverting the State's testimonial evidence.

 Additionally, the gravity of Goodman's pattern of alcohol use, misuse, and/or abuse will
undoubtedly become an issue before the jury if the case reaches the punishment phase. Young, by
virtue of having previously represented Goodman on an alcohol-related charge, and having discussed
with him his daily alcohol consumption, will have greater insight into Goodman's habits and
character flaws than would someone who had not been a part of that necessarily intimate attorney-client relationship. Since this information may be highly probative and relevant at the instant trial,
there exists a genuine threat that Young, to properly fulfill his responsibility as a zealous prosecutor,
would use the confidential information to make the best case that Goodman is deserving of the
strongest punishment from the judge or jury. See id. This creates an undeniable advantage for the
State--an advantage that is both violative of the right of due process and avoidable. See id. 

 We conclude the evidence before the trial court leads to but one, inescapable conclusion: 
these confidences (learned by Young during his prior service as Goodman's attorney in the most
recent DWI prior) are so "substantially related" to the issues that will arise in the current prosecution
that we have before us "the existence of a genuine threat of disclosure," which necessitates Young's
disqualification. Because the trial court did not reach this determination, the trial court erred, and
we must direct the lower court to render the judgment that is required by the evidence.

 F. Why This Rises to a Due-Process Violation

 Remembering the United States Supreme Court's guidance from Mathews, 424 U.S. at 335,
regarding how to identify due-process violations, we are led to the conclusion that this case achieves
such a classification. First, Goodman's interest in keeping confidential his attorney-client
communications will be protected by prohibiting Young from prosecuting this case. Second, there
is a real risk that these communications will be used to Goodman's detriment if Young is not
disqualified. There are no adequate safeguards short of Young's disqualification that will protect this
interest. And finally, the Government (as represented by the Lamar County district attorney's office)
will, at best, suffer a minimal fiscal or administrative burden due to Young's disqualification because
all that is required is the substitution of another attorney to handle Goodman's prosecution. See Tex.
Comm. on Prof'l Ethics, Op. 538 (discussing solutions of appointing special prosecutor under Tex.
Code Crim. Proc. Ann. art. 2.07 (Vernon 2005), or screening the elected from other lawyers in
prosecutor's office). Thus, on balance, the factors enunciated by the Supreme Court tip the scales
of justice in Goodman's favor on the issue of whether the trial court's failure to disqualify Young
rises to the level of a due-process violation.

 G. Appeal Is Neither an "Efficient" Nor Adequate Remedy

 The State has argued that Goodman has two available remedies in this case: If he is
convicted, and if the fact-finder makes affirmative findings regarding the jurisdictional priors, then
Goodman could appeal the conviction and seek reversal based on the erroneous denial of his motion
to disqualify the prosecutor. See Tex. Code Crim. Proc. Ann. art. 44.02 (Vernon 1979). Goodman
may also file an application for writ of habeas corpus following the disposition of any appeal. See
generally Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon 2005). However, appeal and habeas
corpus are both inadequate and inefficient remedies in this case for several reasons.

 First, requiring the parties to proceed through a lengthy litigation process, just so Goodman
could later obtain reversal on appeal, would be a tremendous waste of the parties' (and the judicial
system's) financial and temporal resources. Second, if Young is convicted and sentenced for the
enhanced first-degree felony, or if he receives any sentence greater than nine years' imprisonment,
he will be ineligible for release on bond pending appeal. See Tex. Code Crim. Proc. Ann. art.
44.04(b) (Vernon Supp. 2006). The threat of incarceration pending an appeal on the denial of the
motion to quash might further impact Goodman's trial strategy. Cf. Kniatt v. State, 157 S.W.3d 83,
85-87 (Tex. App.--Waco 2005, no pet.) (discussion that pretrial incarceration resulting from
improper revocation of bond may cause involuntary guilty plea), rev'd, PD-0323-05, 2006 Tex. Crim.
App. LEXIS 1128 (Tex. Crim. App. June 20, 2006) (finding revocation of bond improper, but guilty
plea freely given). Third, Goodman is not entitled to bond pending the determination of a post-conviction application for writ of habeas corpus. See generally Tex. Code Crim. Proc. Ann. art.
11.07, § 5 (applicant entitled to release only if Texas Court of Criminal Appeals grants such relief
in its disposition on application's merits). Fourth, Goodman has no right to counsel during a habeas
corpus proceeding. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Individually and collectively,
these reasons dissuade us from concluding the State's proposed alternative remedies are adequate.

IV. State ex rel. Eidson v. Edwards

 Finally, the State contends a trial court is without authority to disqualify a prosecutor due to
his or her status as an independent member of the judicial branch. In support of this contention, the
State cites State ex rel. Eidson v. Edwards, 793 S.W.2d 1, 6 (Tex. Crim. App. 1990). In Eidson, a
member of the Taylor County criminal district attorney's staff had previously represented James
Edward Clayton in three felony cases. Id. at 3. The court then reasoned that (1) because the offices
of county and district attorneys are constitutionally protected under Tex. Const. art. V, § 21;
(2) because the effect of the trial court's disqualification order was to remove the entire prosecutor's
office without conducting a removal trial, see Tex. Local Gov't Code Ann. § 87.013 (Vernon
1999); and (3) because there was no difference between removing a prosecutor from a case and
removing a prosecutor from office, then the trial court erred in ordering the disqualification of the
Taylor County criminal district attorney's office in its prosecution of Clayton. Eidson, 793 S.W.2d
at 4-6.

 We believe the applicability of Eidson has since been undermined. In Pirtle, 887 S.W.2d at
926, this State's highest criminal court enunciated a standard that mandamus relief is available when
the relator can establish that he or she has no other adequate legal remedy and that the facts of the
case show he or she has a clear legal right to the remedy sought. A trial court may disqualify a
State's attorney on the basis of a conflict of interest that rises to a due-process violation. Id. at 927. 
In Hill, the court ultimately concluded that the relator had failed to make such a showing. However,
the concurring and dissenting opinions further clarify that the court was debating the proper
standards for the availability of mandamus relief, under the assumption that ultimately (on a proper
showing) relief could be granted. See, e.g., id. at 933 (Meyers, J., concurring) ("But it is clear from
the text of this opinion that the plurality judges do not mean Respondent would really have been
without lawful authority to bar the AGs from serving as prosecutors had the evidence shown a
conflict of interest rising to the level of a due process violation . . . ."). Accordingly, we believe the
sweeping language employed in Eidson is no longer binding precedent in light of the court's more
recent decisions.

V. A Final Note

 Our decision today should not be read as an endorsement of the idea that a district or county
attorney is forever barred from prosecuting his or her former clients. That is not the law, nor should
it be. Instead, a disqualification should occur only when (1) the underlying proceeding is so
substantially related to real and actual disclosures (as opposed to theoretical discussions) that
occurred during the previous attorney-client relationship, and (2) there exists a genuine threat that
disclosure of these confidential communications will either materially advance the State's case or
drastically undermine the accused's ability to mount a defense--such that this advancement or
undermining rises to the level of a due-process violation. We believe such is the case here, but only
because of the discrete facts in the record before us.

 There may be other times, even cases involving subsequent DWI charges, where there is no
undisputed evidence of actual confidential communications that would materially impact either the
State's case or the accused's ability to mount a defense. In those situations, disqualifications should
neither be sought nor granted. Similarly, merely because a prosecutor once served as an accused's
attorney for a traffic ticket does not now automatically prohibit that attorney from prosecuting the
accused for murder; much more evidence must be apparent in the record that somehow demonstrates
that the denial of a disqualification motion will result in a due-process violation.

VI. Conclusion

 For the reasons given above, we cannot say either appeal or habeas provides Goodman with
an adequate or efficient remedy. Goodman has shown Young possesses confidential information as
a result of the latter's prior representation of Goodman for a DWI case now being used by the State
to jurisdictionally enhance Goodman's current charge. The former and the current charges are
substantially related, and there is a genuine threat that the confidential information may be used
against Goodman. To permit Young to continue to represent the State would violate Goodman's
due-process rights. Because the law and facts available in this case lead to that inescapable
conclusion, and because the trial court did not so hold, we find the trial court erred in denying
Goodman's petition for writ of mandamus. We, therefore, conditionally grant Goodman's petition. 
The writ will issue only if the trial court does not withdraw its previous order of denial and enter an
order disqualifying Young in accordance with the opinion of this Court within ten days of the
issuance of our opinion.



 Jack Carter

 Justice


Date Submitted: December 20, 2006

Date Decided: December 21, 2006
1. We take judicial notice of the fact that Young was elected Lamar County's county attorney,
also performing the duties of a district attorney, in 2004. See Tex. R. Evid. 201(b), (f).
2. The charge in cause number 18802 was originally categorized as a third-degree felony. 
Goodman ultimately pled guilty pursuant to a negotiated plea agreement and received punishment
at the misdemeanor level.