**Beth Suzanne LANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–06–00202–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted June 20, 2007.

Decided June 29, 2007.

David A. Pearson, IV, Fort Worth, for appellant.

Gary D. Young, Lamar County and Dist. Atty., Paris, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

Beth Suzanne Landers desired that Lamar County Attorney, the Honorable Gary D. Young, be disqualified in this case from prosecuting her for intoxication manslaughter.[1] In fact, she unsuccessfully attempted, both before and after trial, to have the trial court order Young's disqualification. Since the trial court declined her requests, she now, after having been convicted and sentenced,[2] claims error because Young previously served as her defense counsel on a different charge five years ago, and that charge was part of the evidence used by the State during the punishment phase of her trial. Because we find no evidence that the State's attorney used any confidential information in the prosecution of Landers for this current charge, we affirm the trial court's judgment.

As a member of the State Bar of Texas, Young is subject to the Texas Disciplinary Rules of Professional Conduct. Texas courts have often looked to these disciplinary rules to decide disqualification issues. *See, e.g., In re Meador,* 968 S.W.2d 346, 350 (Tex.1998); *In re Goodman,* 210 S.W.3d 805, 809–16 (Tex.App.-Texarkana 2006, orig. proceeding); *In re Works,* 118 S.W.3d 906, 908–09 (Tex.App.-Texarkana 2003, orig. proceeding). While the disciplinary rules are merely guidelines for court-ordered disqualification (rather than controlling standards), these rules do provide guidance—even in cases where an attorney may not have clearly violated one of this State's disciplinary rules. *In re EPIC Holdings, Inc.,* 985 S.W.2d 41, 48 (Tex.1998); *Meador,* 968 S.W.2d at 351; *see also Anderson Producing, Inc. v. Koch Oil Co.,* 929 S.W.2d 416, 421 (Tex.1996); *Gonzalez v. State,* 117 S.W.3d 831, 837–38 (Tex.Crim.App.2003) (using TEX. DISCIPLIN-

---

1. Some of the documents in the trial court's file conflict in identifying the charge against Landers. Notably, the trial court's judgment erroneously identifies the conviction as being for intoxication assault, a third-degree felony. *See* TEX. PENAL CODE ANN. § 49.07 (Vernon 2003). The actively pursued count two of the indictment, the oral guilty plea to that count, and the punishment-phase jury charge consistently identify the charge as intoxication manslaughter, a second-degree felony. *See* TEX. PENAL CODE ANN. § 49.08 (Vernon 2003). Given the single jurisdictional enhancement used, both the sentence range with which the jury was charged and Landers' sentence are consistent with the second-degree felony of intoxication manslaughter, enhanced with one prior felony conviction to a punishment range for a first-degree felony. *See* TEX. PENAL CODE ANN. § 12.42(b) (Vernon Supp.2006). The trial court's judgment should be modified to describe intoxication manslaughter as the charge to which Landers pled guilty and for which she was sentenced.

2. Landers pled guilty to the second-degree felony of intoxication manslaughter and true to a single felony enhancement, and the jury assessed her punishment within the range for a first-degree felony. *See* TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp.2006). The jury assessed Landers' punishment at ninety-nine years' imprisonment and a fine of $10,000.00.

ARY R. PROF'L CONDUCT 3.08 as guideline); *House v. State*, 947 S.W.2d 251, 252–53 (Tex.Crim.App.1997) (citing Rule 3.08, cmt. 10, which states: "this rule may furnish some guidance"); *Works*, 118 S.W.3d at 909; *In re Bahn*, 13 S.W.3d 865, 872 (Tex. App.-Fort Worth 2000, orig. proceeding).

Rules 1.05 and 1.09 of the Texas Rules of Disciplinary Procedure are pertinent to Young's prior and current representation in the proceeding now before this Court. Rule 1.05 provides that, with certain exceptions not applicable here,

> [A] lawyer shall not knowingly ... (2)[u]se confidential information of a client to the disadvantage of the client unless the client consents after consultation [or] (3)[u]se confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the former client consents after consultation or the confidential information has become generally known.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.05(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 2006) (TEX. STATE BAR R. art. X, § 9). Rule 1.09 concerns conflicts of interest:

> Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client ... if the representation in reasonable probability will involve a violation of Rule 1.05; or ... if it is the same or a substantially related matter.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp. 2006).

■ A prosecutor should be disqualified when the matter being prosecuted is the same matter for which that attorney previously represented the accused. *Ex parte Morgan*, 616 S.W.2d 625, 626 (Tex.Crim. App.1981); *see also Ex parte Spain*, 589 S.W.2d 132, 133–34 (Tex.Crim.App.1979); Tex. Comm. on Prof'l Ethics, Op. 538, 64 TEX. B.J. 698 (2001) (discussed further below). For example, if an attorney previously represented a husband who is accused of murdering his wife, the attorney may not now prosecute the State's case against the husband for that same alleged murder. In such a situation,

> there exists the very real danger that the district attorney would be prosecuting the defendant on the basis of fact acquired by him [or her] during the existence of his [or her] former professional relationship with the defendant. Use of such confidential knowledge would be a violation of the attorney-client relationship and would be clearly prejudicial to the defendant.

*Morgan*, 616 S.W.2d at 626 (referencing *Gajewski v. United States*, 321 F.2d 261 (8th Cir.1963)). In *Morgan*, Texas' highest criminal court found that an attorney who had formerly represented a defendant at trial (in which the defendant received a probated sentence) was prohibited from subsequently representing the State at a hearing regarding the revocation of that same defendant's probated sentence in the case for which that attorney had represented the defendant. *Id.* at 626. Such a conflict of interest inherently rose to the level of a due-process violation. *Id.* The court reached a similar conclusion in *Spain*. 589 S.W.2d at 134 (attorney could not represent State at probation revocation hearing for same case in which counsel previously served as defense attorney).

In 1998, the Texas Supreme Court reviewed an original proceeding in which several defendants sought the disqualification of the plaintiff's attorneys. *See EPIC*

*Holdings,* 985 S.W.2d at 43–44.[3] The defendants alleged the plaintiff's lawsuit against them involved proceedings that were "substantially similar" to the legal services previously provided to the defendants by the now adverse attorneys. *Id.* The plaintiff's lawyers had previously helped draft the articles of incorporation for one of the defendants, and one of the plaintiff's claims sought to attack the validity of the work previously completed for the defendants. *Id.* at 50–51. Justice Hecht, writing for a 6–3 majority, agreed disqualification was appropriate:

> We have held that two matters are "substantially related" within the meaning of Rule 1.09 when a genuine threat exists that a lawyer may divulge in one matter confidential information obtained in the other because the facts and issues involved in both are so similar. Such a threat exists here, when information Johnson & Gibbs lawyers obtained from George and EPIC in 1988 may be relevant in the prosecution of Anderson's claims. An actual disclosure of confidences need not be proven; the issue is the existence of a genuine threat of disclosure because of the similarity of the matters.

*Id.* at 51 (footnotes omitted). Thus, the maxim we take from *EPIC Holdings* is that, where a subsequent matter is "substantially related," the attorney may also be prohibited from representing a party adverse to the former client. *See also Metro. Life Ins. Co. v. Syntek Fin. Corp.,* 881 S.W.2d 319, 320 (Tex.1994). This "substantial relationship" test is a product of common law and predates the Texas Rules of Disciplinary Conduct for attorneys. *In re Cap Rock Elec. Coop.,* 35 S.W.3d 222, 230 (Tex.App.-Texarkana 2000, orig. proceeding).

In 2001, the Texas Center for Legal Ethics and Professionalism was asked to address whether "a lawyer, who is the newly elected district attorney, [is] prohibited from prosecuting a former client in a new criminal proceeding." Tex. Comm. on Prof'l Ethics, Op. 538. While opinions of the Texas Ethics Commission are advisory, rather than binding, Opinion 538 addressed issues similar to those now before this Court. The opinion acknowledged that, under Rule 1.09, an attorney is prohibited from representing a party adverse to a former client if the matter then being litigated would be considered "substantially related" to the prior representation. *Id.* "The 'substantially related' aspect primarily involves current proceedings where a lawyer could have acquired confidential information in a previous representation that could now be used to the former client's disadvantage or the advantage of a current client or some other person." *Id.* (referencing Comment 4, Rule 1.09). The ethics opinion then noted that the "confidentiality rules are designed to encourage such free discussions with the added guarantee that confidentiality will continue even after the attorney-client relationship is terminated," but that allowing an elected district attorney to prosecute a former client ultimately "undermine[s] our legal system." *Id.* (referencing Comments 1 and 8, Rule 1.05). The only way the elected prosecutor could avoid an ethical conflict would be if he or she proceeded cautiously, "ignoring any fact known by the new prosecutor about the former client as a result of the former representation." *Id.* But, continued the ethics committee, this is not an adequate solution:

---

**3.** We realize the current proceeding is criminal in nature. We, however, believe the civil bar's development of the relevant due-process analysis can provide instruction when such guidance does not conflict with the criminal bar's jurisprudence.

Although a prosecutor has the responsibility to see that justice is done and not simply be an advocate, Comment 1, Rule 3.09, the prosecutor is still obligated to act with competence, commitment and dedication on the State's behalf. Comment 6, Rule 1.01. Adherence to the Rules places an impossible burden on an effective prosecutor and creates an almost certain probability that in the adversarial trial setting, confidentiality will be compromised. Similarly, to obtain and ensure protection, the objecting former client is forced to divulge the very same confidential information he seeks to prevent from disadvantageous use, thus defeating the purpose of the rules. These conflicting obligations impose conflicting duties on both the prosecutor and the former client and thus requires [sic] prohibition of this practice, absent the former client's consent. *See* Comment 7 to Rule 1.06.

*Id.*

Before trial, Landers filed a motion to disqualify Young on the basis that he had previously represented her "in a prior case involving similar facts and issues in controversy." Specifically, Landers claimed Young's prior representation of her in Lamar County cause number 19233 (in which she was charged with intoxicated assault but convicted of misdemeanor driving while intoxicated) created a conflict of interest that required Young's disqualification.

The trial court received testimony and heard argument on the disqualification motion September 19, 2006. Landers testified at the hearing, stating she had been previously charged with intoxication assault in 2002 or 2003 and was, for that case, represented by Young. Questioned by her attorney, Landers testified:

Q: And as a result of that case, you divulged some information that was personal to you to him [Young] representing you and that case in which he ultimately reduced the case down to 180 days in jail?

A: Yes.

Q: Do you feel like your rights as a citizen of the United States would be violated if he were prosecuting you in this case?

A: I do.

[Defense counsel]: No further questions.

Then, Lloyd Whelchel, assistant county attorney, questioned Landers at some length:

Q: Mrs. Landers, what information did you give Mr. Young?

A: He was privy to my criminal history.

Q: What else?

A: He was privy to my history and background information.

Q: Like what? You're telling the court—what information did you give him—

A: *It's difficult for me to recall at this time precisely what information I gave Mr. Young as my attorney.* However, he was entitled to information he should not be able to use against me in this case.

Q: Like what?

A: *I don't remember specifically. I don't recall.*

Q: *You would agree with me that your criminal history is a matter of public record?*

A: *Yes.*

Q: *Any prosecutor in the State of Texas is going to have access to the information?*

A: *That's true.* But also he himself has access to information regarding my

friends, which two of those friends are being used against me in this case.

Q: If people are being used as witnesses in this case, that means they saw something?

A: No, they weren't even there.

Q: Mrs. Landers, hold on. They either saw something in 2005 when you committed this murder or they were witnesses to something that occurred back in 2003, 2002 on your previous case. Those names are contained in offense reports that would be available to any prosecutor. Do you agree with that?

A: No, sir.

Q: So you don't think their names and the offense reports, anybody could not have access to that information?

A: No.

Q: *Give us the names of the witnesses that you have that you think—*

A: Amy Burrows, William Hindman and Steve Burrows.

Q: Mrs. Landers, would you be surprised to learn that their names are contained in the offense reports involving this offense?

A: Yes.

Q: *Their names are in the offense report from the 2005 case that you are currently charged with?*

A: *Correct.*

Q: So really anything that occurred in it doesn't—

A: It does. There was information divulged about them and asked about them in that case.

Q: But the fact that their names are listed is simply a reflection of the fact that they witnessed things that occurred in 2005. Would you agree with that?

A: No, sir.

Q: Anybody can go ask them questions and find out your habits and your—

A: No, sir.

Q: Do you also agree that they have known you for a number of years and any prosecutor can look at the names on the offense reports and ask them questions?

A: Someone—Gary asked me questions and I divulged the information.

Q: *Do you agree with me that it doesn't matter who prosecutes you, they will have access to that same information?*

A: *Yes.*

(Emphasis added.) Young also testified:

Q: *Mr. Young, the information you heard Mrs. Landers complain of, is that information contained in the current offense report from 2005?*

A: *Yes.*

Q: *Is that information any prosecutor would have access to?*

A: *Yes.*

Q: The individuals that she named, any prosecutor can go ask them questions as to 2002 or 2003?

A: It doesn't have anything to do with those. It has to do that she was with a Steve Burrows just prior to the accident when Mr. Nelson was killed, that she was going over to Amy Burrows and Chip Hindman's house. It has nothing to do with any prosecution with Mrs. Landers.

Q: As a matter of fact, at a previous plea bargain date, had Mrs. Landers expressed to you that she had no objection to you prosecuting the case, is that correct?

A: Yes.

[The State]: Pass the witness.

Then, Ben Massar, Landers' defense counsel, cross-examined Young:

> Q: Mr. Young, during your representation of Mrs. Landers back in 2002, 2003, did you discover during your representation that she had a long history of alcohol abuse?
>
> A: I think that's obvious from the criminal history.
>
> Q: Did you learn of any—
>
> A: I don't intend to use anything she told me in any manner. We will introduce the judgments and sentences as it relates to those cases and that's it.
>
> [Defense counsel]: No further questions.

(Emphasis added.) The lower court then denied Landers' motion to disqualify Young.

■ The record before the trial court at the time of the pretrial hearing shows the current case involves allegations that were very similar to the original allegations contained in the 2002 charges. What is lacking from the pretrial record, however, is any indication that Young possesses unique, confidential information about Landers or her 2002 case or that there exists a "genuine threat of disclosure" of any confidential information.

Landers' fears at the pretrial hearing concerned the circumstances surrounding the 2002 accident, her criminal history, and the three named friends. But the record also shows that Young's awareness of Landers' alcohol and cocaine use (as factors contributing to the 2002 accident) were already known by the police, as those items were specifically mentioned in the official report. Any substitute prosecutor for the current case could easily obtain a copy of the 2002 police report and learn of Landers' prior alcohol and substance abuse problems. As such, Young's knowledge is neither unique nor confidential.

The same is true of Landers' criminal history. And, as Young explained, Landers' three mentioned friends were potential witnesses already known to the State as a result of the 2005 police investigation; the State did not learn of those witnesses as a result of any confidential disclosure made by Landers to Young during the scope of the 2002 attorney-client relationship. Accordingly, because Landers failed to carry her burden of establishing a genuine threat that Young would disclose unique, confidential information learned by him during the scope of his 2002 representation of Landers, the trial court did not err by denying Landers' pretrial motion to disqualify Young.

At the hearing on Landers' motion for new trial, the trial court ordered the State to produce its case file in this matter to the court for an in camera inspection. The trial court also received testimony from Young and Landers.

Young testified that he served as Landers' defense attorney on the prior intoxicated assault charge for which Landers was convicted only of driving while intoxicated. During the scope of that representation, Young received copies of Landers' medical records as part of the State's discovery disclosures. Young also knew about Landers' possible use of both alcohol and cocaine—a thread that was common to both the 2002 charge and the charge now on appeal. Young, however, explained that this information was public knowledge, as it had been reported in the local newspaper and had been referenced in the police department's original offense report for the 2002 charge.

Young was also asked about whether, during that prior representation of Landers, he had learned that Landers had been abusive to her hospital care providers in 2002 or that her drug and alcohol abuse problems rendered her unable to be an

adequate parent. Young denied being aware of these issues until they were either brought out during or after the trial in the current case.

Defense Exhibit 8, admitted during the hearing on Landers' motion for new trial, is a supplemental police report concerning the 2002 intoxication assault charge. The report states that doctors from St. Joseph's Hospital informed the police department that a blood specimen taken from Landers shortly after her 2002 accident tested positive for alcohol, cocaine, and marihuana. Defense Exhibit 9, also admitted at the hearing, includes Young's personal notes from his client interview session with Landers in 2002; those notes include more specific details about Young's use of alcohol, cocaine, and marihuana as it related to the 2002 incident. Young later described Exhibits 8 and 9 as containing information that could easily be found in the public records.

Defense Exhibit 10 is a collection of Landers' medical records filed with the district clerk's office in connection with Landers' 2002 charges. These medical records note that the nurses could smell alcohol on Landers' breath, that Landers was very combative toward her caregivers during treatment, and that Landers' toxicology tests revealed positive results for controlled substances.

Young testified he did not use, in his current prosecution of Landers, any confidential information obtained from his 2002 representation. Nor, according to his continued testimony, did Young review his 2002 defense file in preparation for prosecuting Landers on the current charge.

Landers also testified. First, she acknowledged that her medical records were available to the State in 2002 due to the nature of the charges she then faced. *See* TEX. TRANSP. CODE ANN. § 724.012 (Vernon Supp.2006). She then told the trial court

that in 2002 she revealed confidential information to Young about the 2002 crime. Specifically, she told Young that she had been under the influence of crack, marihuana, and alcohol at the time of the accident. Landers then complained that Young had used this information to cross-examine her during the current proceedings. But, that information, too, had already been available to the State by virtue of their ability to obtain Landers' medical records shortly after that accident. Accordingly, Young's general knowledge of such (that Landers' use of alcohol, marihuana, and cocaine as a causal factor of the 2002 crime) cannot, on this appellate record, be said to be the unique result of Landers' confidential disclosure.

Second, Landers testified that in 2002 the State offered her a plea bargain of four years in prison. Landers had believed this offer was too high to accept, and Young told her that the high offer was made, in part, due to her combative behavior toward the hospital caregivers who attended to her treatment immediately following that accident. At trial in the present case, Young cross-examined Landers on her combative behavior toward the emergency medical personnel who attended to Landers immediately following the accident. Young then tried to draw parallels between Landers' behavior following the 2002 incident and that following the current intoxication assault. Nevertheless, the issue of whether Landers had been combative toward hospital caregivers in 2002 was obviously a consideration already known by the State in 2002, as it was a fact mentioned in Landers' 2002 medical records, which were already in the State's possession before Young became the elected county attorney. Accordingly, the State did not "acquire" the information about Landers' 2002 combative behavior via the revelation of confidential informa-

tion by Young after he became the elected prosecutor.

Third, Landers complained in her testimony that Young unfairly cross-examined her about the fact that her lengthy history of drug use required her to give custody of her children to her parents. Landers opined that Young was able to cross-examine her about her lack of parenting skills only because she, back in 2002, had told Young that she and her children then lived with her parents. However, Landers herself testified on direct examination at trial that she had a thirty-year history of abusing alcohol, illegal narcotics, and prescription drugs. Therefore, Young's ability through cross-examination to correlate Landers' drug abuse with her relinquishment of custody was enabled not by Young's prior service as Landers' attorney, but by the testimony which Landers herself gave on direct examination. Moreover, the facts of this case as well as Landers' own criminal history (which contains numerous alcohol and drug-related crimes over a ten-year period) both suggest Landers has a substance abuse problem, a conclusion that can easily be reached without the aid of any confidential information from Landers. As such, the record before us does not reveal Young either possessed or used unique, confidential information about Landers' history of drug and alcohol abuse in prosecuting this case.

Finally, Landers complained in her testimony that Young used confidential information about her criminal history to cross-examine her in the current trial. Specifically, she contended at the hearing on her motion for new trial that Young cross-examined her about the specifics of a robbery-by-threat conviction she had. Landers testified to telling Young in 2002 that the robbery conviction was the result of her merely accompanying someone else who committed the crime; Landers con-

tended she was convicted as a party, not as a principal, to the offense. According to Landers, Young used this information during the current trial to portray Landers as someone who always denies responsibility for her actions, and as someone deserving of a greater punishment than someone else who accepts responsibility for his or her actions.

We do not find support for Landers' claims in the reporter's record. It is true that Young asked Landers about the circumstances surrounding her involvement in the 1993 robbery of a pharmacy. And it is correct that Young asked Landers whether she was blaming her entire criminal history on her substance abuse problems. But it is also clear that a state prosecutor would have been entitled to ask Landers about the specific circumstances of any of her prior criminal offenses, as well as how those crimes were committed and how they impacted the victims. *See* TEX.R. EVID. 608(b), 609; TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3 (Vernon 2006). It is also clear from the record that Landers had already testified about her belief that her criminal history was the direct result of her drug and alcohol abuse. Thus, we cannot say the record supports the allegation that Young used confidential information as part of the State's punishment case against Landers.

Finally, in its appellate brief for this case, the State invites us to reconsider our opinion in *Goodman*, 210 S.W.3d 805. In *Goodman*, we ruled pretrial that Young must be disqualified from prosecuting Goodman, a former client, because Young had gained, during his prior representation, confidential knowledge of Goodman's drinking habits and volumes, which were directly relevant to the pending charge for which Young intended to prosecute Goodman. We believe the facts of *Goodman* are distinguishable from the case at bar, in that Goodman was able to direct us to

unique and confidential information possessed by Young that, if used by Young in prosecuting Goodman, would present a "genuine threat" to Goodman's due-process rights. Landers has not made such a showing here, and Landers' trial has occurred. We see no reason to withdraw our analysis of the discrete facts and procedural situation presented in *Goodman.*

As we stated in *Goodman,* an accused has the burden of demonstrating that the prosecutor used, in the current proceeding, information which the prosecutor learned from the accused during the scope of the prosecutor's prior service as the accused's defense counsel. *Id.* at 808. In this case, each item that Landers contends was the product of confidential information used by Young actually had its genesis either from Landers' medical records (which were already in possession of the State in 2002), from Landers' criminal history (which was already in the State's possession in both 2002 and 2005), or from other sources (such as Landers herself when she testified in her own defense). Landers has not provided any evidence that Young used any confidential information from the 2002 representation in prosecuting the current case. Accordingly, we overrule each of Landers' points of error.

We modify[4] the trial court's judgment in two respects: the offense for which Landers was convicted is amended from "Intoxication *Assault*" to "Intoxication *Manslaughter,*" and the "statute for the offense" referenced therein is amended from Sections "*49.07* and 12.42" to Sections "*49.08* and 12.42."

As modified, we affirm the judgment of the trial court.

---

4. Please see the first footnote in this opinion for an explanation of this modification.