**In re STATE ex rel. Gary D. YOUNG, County and District Attorney of Lamar County, Texas, Relator**

v.

**The SIXTH JUDICIAL DISTRICT COURT OF APPEALS AT TEXARKANA, Respondent.**

**No. AP–75648.**

Court of Criminal Appeals of Texas.

Sept. 26, 2007.

Matthew Paul, State's Atty., Austin, TX, for State.

## *OPINION*

PRICE, J., delivered the opinion for a unanimous Court.

This case involves a petition for writ of mandamus, filed by the County Attorney of Lamar County, Gary D. Young (relator). Young seeks relief from an order entered by the Sixth Court of Appeals in Texarkana (respondent), in response to an application for writ of mandamus that was filed by Leslie Gene Goodman (the real party in interest). We will conditionally grant mandamus relief.

### FACTS AND PROCEDURAL POSTURE

In 2000, prior to his election as County Attorney of Lamar County, Young was in

private practice. In that capacity he defended Goodman in a prosecution for driving while intoxicated, in cause number 18802, in Lamar County. In the course of that representation, Goodman told Young "how many beers I drink a day[.]" Goodman was convicted of DWI on September 12, 2000.

After he was elected, Young obtained a subsequent indictment against Goodman, charging him with felony DWI, allegedly committed on February 1, 2006.[1] One of the two prior DWI convictions that were alleged for purposes of elevating this most recent DWI to felony status was the September 2000 conviction in which Young had represented Goodman. Goodman filed a pre-trial motion in which he asked the trial court to order Young to disqualify himself from prosecuting Goodman on the grounds that they had previously shared an attorney-client relationship. The trial court conducted a brief hearing on the motion on September 19, 2006. Young testified at the hearing that he neither sought nor obtained Goodman's permission to prosecute him. He took the position that the fact of Goodman's prior conviction for DWI in cause number 18802 was a matter of public record which he could easily prove up without resort to any confidential communications or any information he might have obtained as a product of his representation of Goodman. "As far as the facts of the case," he assured the trial

court, "none of that is going to be used." The trial court denied Goodman's motion.

Goodman filed an application for writ of mandamus in the Sixth Court of Appeals. In that application, he sought to have the court of appeals order the trial court to issue an order disqualifying Young from prosecuting him. The court of appeals obliged Goodman and ordered mandamus relief.[2] The court of appeals acknowledged that a trial court only has authority to order a prosecutor to disqualify himself based upon a conflict of interest so substantial as to "rise[ ] to the level of a due-process violation."[3] "A defendant's due process rights are violated when an attorney represents a client and then participates in the prosecution of that client in the same matter or another matter with a substantial relationship to the first."[4] The court of appeals concluded that, on the facts presented, the trial court could only have concluded that Goodman's due-process rights were violated. Though Young did not propose to represent the State in the same matter as he had previously represented Goodman, he did propose to represent the State in another matter with a substantial relationship to the first. Moreover, the court of appeals found this violation of due process to be so "inescapable" as to warrant mandamus relief.[5]

■ Young has now sought mandamus relief from this Court from the judgment of the court of appeals.[6] We filed and set

---

1. See TEX. PENAL CODE §§ 49.04 & 49.09.

2. *In re Goodman*, 210 S.W.3d 805 (Tex.App.-Texarkana 2006).

3. *Id.* at 808 (citing *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex.Crim.App.1994) (plurality opinion)).

4. *Id.* (quoting Edward L. Wilkinson, *Conflicts of Interest in Texas Criminal Cases*, 54 BAYLOR L.REV. 171, 176–77 (2002)).

5. *In re Goodman, supra,* at 814, 816.

6. This Court lacks jurisdiction to consider the decisions of the courts of appeals in the exercise of their original jurisdiction, at least under our appellate authority via petitions for discretionary review. *Jacolos v. State*, 692 S.W.2d 724 (Tex.Crim.App.1985). However, we can exercise our own original jurisdiction in a separate mandamus proceeding to determine whether a court of appeals has "clearly abused its discretion" in granting mandamus relief. *Dickens v. Second Court of Appeals*, 727 S.W.2d 542, 549–50 (Tex.Crim.App. 1987).

his application to consider whether the court of appeals clearly abused its discretion in finding that a violation of due process was so apparent on the record that the trial court had no discretion but to disqualify Young. We hold that the court of appeals did clearly abuse its discretion for reasons that follow.

## MANDAMUS STANDARD

The traditional test for determining whether mandamus relief is appropriate requires the relator to establish two things. First, he must show that he has no adequate remedy at law to redress his alleged harm. Second, he must show that what he seeks to compel is a ministerial act, not involving a discretionary or judicial decision.[7] If the relator fails to satisfy either aspect of this two-part test, then relief should be denied. As to the latter requirement, we have said that it is satisfied if the relator can show he has "a *clear* right to the relief sought"—that is to say, "when the facts and circumstances dictate but one rational decision" under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles.[8]

While a trial court has a ministerial duty to rule upon a motion that is properly and timely presented to it for a ruling, in general it has no ministerial duty to "rule a certain way on that motion."[9] By this we mean that mandamus will not lie to "compel the trial court 'to rule a certain way' on an uncertain and unsettled issue the resolution of which involved a fair amount of discretion."[10] In short, it is improper to order a trial court to exercise its judicial (as opposed to its ministerial) function in a particular way unless the relator has a "clear right to the relief sought," i.e., the law he invokes is definite, unambiguous, and unquestionably applies to the indisputable facts of the case.

When a relator asks this Court to issue a writ of mandamus to order a lower appellate court to rescind a mandamus order of its own, we measure the lower appellate court's exercise of its own mandamus authority under a "clear abuse of discretion" standard.[11] In practice, however, we pay no particular deference to the court of appeals's judgment with respect to whether the relator has established the requisites for mandamus relief. "It is settled that a court of appeals clearly abuses its discretion when it grants a writ of mandamus absent a proper basis."[12] Thus, we determine whether the court of appeals abused its discretion essentially by undertaking a "de novo application of the

7. *E.g., De Leon v. Aguilar,* 127 S.W.3d 1, 5 (Tex.Crim.App.2004).

8. *Buntion v. Harmon,* 827 S.W.2d 945, 947, 948 n. 2 (Tex.Crim.App.1992). Stated another way, an act may be regarded as "ministerial" when the facts are undisputed and, given those undisputed facts, "the law clearly spells out the duty to be performed ... with such certainty that nothing is left to the exercise of discretion or judgment." *State ex rel. Healey v. McMeans,* 884 S.W.2d 772, 774 (Tex.Crim. App.1994) (quoting *Texas Dept. of Corrections v. Dalehite,* 623 S.W.2d 420, 424 (Tex.Crim. App.1981)).

9. *State ex rel. Curry v. Gray,* 726 S.W.2d 125, 128 (Tex.Crim.App.1987).

10. *State ex rel. Rosenthal v. Poe,* 98 S.W.3d 194, 199 n. 3 (Tex.Crim.App.2003).

11. *Dickens v. Second Court of Appeals, supra; Hill v. Fifth Court of Appeals,* 34 S.W.3d 924, 926 (Tex.Crim.App.2001); *Hill v. Fifth Court of Appeals,* 67 S.W.3d 177, 180 (Tex.Crim. App.2001); *Banales v. Court of Appeals of Thirteenth Judicial District,* 93 S.W.3d 33 (Tex.Crim.App.2002).

12. *Lanford v. Fourteenth Court of Appeals,* 847 S.W.2d 581, 586 (Tex.Crim.App.1993).

two pronged test applied below by the court of appeals." [13]

There has been some controversy in recent years whether the "clear right to relief" articulation of the ministerial act requirement for mandamus relief has resulted in an unduly liberalized exercise of mandamus authority.[14] We need not address that controversy here, however. We hold that, even under the clear right to relief standard, the court of appeals clearly abused its discretion to grant mandamus relief.

## NO CLEAR RIGHT TO RELIEF

■ The court of appeals began with the proposition that Goodman was entitled to relief only if he could demonstrate that Young's participation in the prosecution against him, however ill-advised from an ethical standpoint, amounted to a violation of due process.[15] As the court of appeals

noted in the course of its lengthy analysis,[16] this Court has held that it constitutes a manifest violation of due process for an attorney to represent the State against a client whom he has represented as a private practitioner in the past *in the same case.*[17] But Goodman did not argue, and the court of appeals did not hold, that because Young represented him in one of the DWI cases presently alleged to enhance the current DWI to felony status, Young thereby represented him in the same case. Nor do we think it reasonably *could* be argued that the facts here demonstrate that Young represented Goodman in the same case.[18] It cannot be said, therefore, that our case-law precedents firmly and unequivocally mandate that the trial court disqualify Young. Goodman has no "clear right to relief" on that account.

Nevertheless, the court of appeals granted mandamus relief. The court of

13. George E. Dix & Robert O. Dawson, 43B Texas Practice: Criminal Practice and Procedure §§ 46.85, at 190 (2d ed.2001).

14. Dix & Dawson, *supra,* §§ 46.51 & 46.54. *See, e.g., Healey v. McMeans, supra,* at 776–80 (Meyers, J., dissenting); *id.* at 780–82 (Baird, J., concurring in denial of motion for rehearing); *Hill v. Pirtle, supra,* at 933–35 (Meyers, J., concurring); *id.* at 937–8 (Baird, J., dissenting); *State ex rel. Hill v. Court of Appeals for Fifth District, supra,* 34 S.W.3d at 928 n. 5; *Rosenthal v. Poe, supra,* at 198–99 n. 3.

15. Even this premise is not without controversy. In *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 4–7 (Tex.Crim.App.1990), a plurality of this Court seemingly held that a trial court was without authority to order an elected district or county attorney to disqualify himself, and that the only remedy for a defendant whose due-process rights are compromised is a "reversal on appeal." However, in a later plurality opinion, Judge White, who also authored the plurality opinion in *Eidson,* construed his earlier holding to be that "[a] trial court may not disqualify a district attorney or his staff on the basis of conflict of interest that does not rise to the level of a due

process violation." *State ex rel. Hill v. Pirtle, supra,* at 927 (plurality opinion). For purposes of this opinion, we will assume, without deciding, that a trial court has authority to disqualify an elected district or county attorney if his continued representation of the State would violate the defendant's due-process rights.

16. *In re Goodman, supra,* at 811.

17. *Ex parte Morgan,* 616 S.W.2d 625, 626 (Tex.Crim.App.1981); *Ex parte Spain,* 589 S.W.2d 132, 134 (Tex.Crim.App.1979).

18. In *Morgan* and *Spain,* both *supra,* we held that probation-revocation proceedings constituted the same cases as the underlying prosecutions that resulted in the probations in the first place. We do not believe that a prosecution can reasonably be construed to be the same as a later prosecution, even if the earlier prosecution results in a conviction that is alleged in the latter prosecution to be one of the jurisdictional facts elevating the latter prosecution to felony status. In any event, we have never held them to be the "same" case in any previous decision.

appeals was unable to identify any definitive, well-settled, and unequivocal legal authority from this Court that indisputably governs the instant factual scenario. Instead, the court of appeals essentially adopted a rule that it found on the civil side of the docket. Under this rule, a prosecutor violates the due-process rights of his former client, at least under some circumstances, if he represents the State against that client having previously represented him in a matter that was "substantially related" to the present prosecution. The court of appeals announced the following legal proposition it believed should have governed the trial court's ruling, concluding that the trial court "erred"[19] in failing to apply it:

> [A] disqualification should occur only when (1) the underlying proceeding [i.e., the case prosecutor is currently prose-

cuting against his former client] is so substantially related to real and actual disclosures (as opposed to theoretical discussions) that occurred during the previous attorney-client relationship, *and* (2) there exists a genuine threat that disclosure of these confidential communications will either materially advance the State's case or drastically undermine the accused's ability to mount a defense—such that this advancement or undermining rises to the level of a due-process violation.[20]

In what is a lengthy and thoughtful opinion, the court of appeals gleaned this rule from a number of somewhat disparate,[21] and precatory,[22] authorities. But, while it may well ultimately prove the appropriate rule of law in criminal cases, it is not the only rational alternative,[23] and it is certain-

19. *In re Goodman, supra,* at 814.

20. *Id., supra,* at 815–16.

21. The launching point of the court of appeals's analysis was a three-part test that the United States Supreme Court applied in the context of deciding what process was due before the federal government could discontinue certain social-security disability benefits. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See Goodman,* 210 S.W.3d at 810. From there, the court of appeals examined Rules 1.05(b) and 1.09(a) of the Texas Disciplinary Rules of Professional Conduct and opinions of the Texas Supreme Court and the Texas Commission on Professional Ethics construing those rules. *Id.* at 810–13. Applying what it gleaned from these various sources to the three-part test from *Mathews v. Eldridge,* the court of appeals concluded that a rule requiring disqualification under the circumstances of this case was necessary to avoid violating Goodman's right to due process. *Id.* at 814 ("Thus, on balance, the factors enunciated by the Supreme Court tip the scales of justice in Goodman's favor on the issue of whether the trial court's failure to disqualify Young rises to the level of a due-process violation.") The court of appeals could point to no case in which these disparate authorities have been previ-

ously combined to form binding authority in support of its rule that a violation of the applicable rules of professional conduct rise to the level of a due-process violation if they "genuinely threaten" the fairness of the proceeding.

22. The court of appeals itself recognized that rules governing attorney ethics and discipline serve as "guidelines" to courts in determining legal questions and that "opinions of the Texas Ethics Commission are advisory, rather than binding, authority[.]" *See Goodman,* 210 S.W.3d at 809–10, 812, and cases cited therein. *See also In re Nitla S.A. de C.V.,* 92 S.W.3d 419, 422 (Tex.2002) ("[T]he disciplinary rules are merely guidelines—not controlling standards—for disqualification motions.").

23. We have held in the context of a violation of another disciplinary rule, for example, that before he can demonstrate a violation of due process, a defendant must establish "actual prejudice," not just the threat, however, genuine (as the court of appeals fashioned its rule here), of prejudice. *See House v. State,* 947 S.W.2d 251, 253 (Tex.Crim.App.1997) ("[I]f a defendant cannot show actual prejudice from an alleged disciplinary rule violation by the State, then he will not be entitled to relief

ly not, as the court of appeals characterized it, "inescapable." [24]

For example, it is not readily apparent why the question presented in Goodman's mandamus proceeding should be governed by a United States Supreme Court opinion that addresses an issue of procedural due process in an administrative-law context.[25] Moreover, the court of appeals relied heavily upon a Texas Supreme Court case, *In re EPIC Holdings, Inc.*[26] In *EPIC Holdings*, the trial court was found to have clearly abused its discretion in failing to disqualify a civil law firm which had undertaken legal work for a defendant in the past that was "substantially related" to the claims of its present client, the plaintiff. Acknowledging that the Texas Disciplinary Rules of Professional Conduct are merely "guidelines" that "do not determine whether counsel is disqualified in litigation," the Texas Supreme Court nevertheless relied upon them to hold that the trial court clearly abused its discretion.[27] But there is no requirement in the civil context that the failure to disqualify counsel must rise to the level of a due-process violation, as at least a plurality of judges of this Court has held there to be when a criminal defendant attempts to disqualify an elected district attorney.[28] Indeed, a plurality of this Court has gone so far as to hold that a trial court "is without legal authority" to disqualify an elected district attorney on the basis of a violation of the disciplinary rules alone.[29]

For these reasons we cannot say that the rule announced by the court of appeals is of such indubitable provenance that the trial court in this case had a ministerial duty to apply it to the facts of this case to reach a particular result in the exercise of what would otherwise constitute a manifestly judicial function. Even if the trial court "erred" in the exercise of its discretion in carrying out that judicial function, that does not, by itself, justify mandamus relief.

## CONCLUSION

We hold that the court of appeals clearly abused its discretion to order the trial court to disqualify Young. We will withhold issuance of the writ, as is our custom, to allow the court of appeals to rescind its mandamus order.

. . . .")'; *cf. Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex.Crim.App.2003) ("Allegations of one or more violations of the disciplinary rules or evidence showing only a possible future violation are not sufficient" to justify attorney disqualification). Moreover, even on the civil side, "[p]erhaps an unsettled question regarding disqualification pursuant to Rule 1.09 . . . is whether the movant must additionally prove actual prejudice resulting from the presumed imparted confidences." Rebecca Simmons & Manuel C. Maltos, *The Fifth Annual Symposium on Legal Malpractice and Professional Responsibility: Article: Exploring Disqualification of Counsel in Texas: A Balancing of Competing Interests*, 37 St. Mary's L.J. 1009, 1034 (2006).

**24.** *In re Goodman, supra,* at 814, 816.

**25.** *Id.* at 810, citing *Mathews v. Eldridge, supra.*

**26.** 985 S.W.2d 41 (Tex.1998).

**27.** *Id.* at 48, 54. *See also NCNB Texas Nat. Bank v. Coker,* 765 S.W.2d 398, 400 (Tex. 1989); *In re Basco,* 221 S.W.3d 637, 638 (Tex.2007).

**28.** *Hill v. Pirtle, supra,* at 927.

**29.** *Eidson v. Edwards, supra,* at 6–7 (plurality opinion).