

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00149-CR

_____

LESLIE GENE GOODMAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 21313

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Concurring Opinion by Justice Carter

OPINION

Unfortunately, Leslie[1] Gene Goodman has a history of driving while intoxicated (DWI).  In fact, he had previously been defended on an earlier DWI charge by Gary Young, the current county attorney of Lamar County, whose office prosecuted Goodman on this DWI charge.

This DWI charge arose from a single-vehicle accident in which Goodman's pickup truck was seen running a stop sign, crossing a street, and colliding with a utility pole.[2]  The trial resulted in a jury verdict finding Goodman guilty of a third-offense DWI and the trial court's sentence of thirty years' imprisonment.

On appeal, Goodman claims error in the trial court's failure to disqualify the prosecutor and in admitting into evidence blood test results and a statement from a nontestifying witness.  We affirm the trial court's judgment because (1) no prejudice has been shown from Young's prior representation of Goodman, (2) the trial court did not abuse its discretion in finding that Goodman's blood was tested for medical purposes, and (3) admitting Stewart's statement to police was not harmful error.

---

[1]We recognize that appellant is identified both as "Lesily" and "Leslie" at different locations in the record.  For consistency, we identify appellant as "Leslie" in this opinion.

[2]Two citizens saw the wreck and observed a man walking away from the accident site.  One citizen attempted to stop him, or perhaps to help him, but the man left on foot with the citizen following.  Officers arrived shortly, and the citizen directed them to a man, who turned out to be Goodman.  One officer drove up behind Goodman, who was walking down the side of the street in a residential area, and yelled at Goodman to "get down, man."  Goodman ignored the officer and continued to amble away at a leisurely pace.  The officer bailed out of his squad car, ran up behind Goodman, and tackled him from behind.  Goodman went down like a sack of potatoes on the side of the road.  Afterward, Goodman had several broken ribs, a collapsed lung, and a head injury where his head had contacted the curb.

2

*(1) No Prejudice Has Been Shown from Young's Prior Representation of Goodman*

The struggle arising due to Young's prior representation of Goodman has an extensive history.

Young represented Goodman as defense counsel in a DWI case in 2000. Thereafter, in 2004, Young was elected county attorney of Lamar County, an office that involves the duties of a prosecutor. In 2006, Goodman was prosecuted for another DWI. At that time, Goodman sought to have Young disqualified to act as prosecutor[3] because Young had previously represented him as defense counsel in the 2000 prosecution.[4] Goodman argued that he had provided Young confidential information about his ongoing drinking problems during the course of the representation. Young contested the request, and the trial court refused to disqualify him.

Goodman sought mandamus relief from this Court. We found that confidential information had been given to Young by Goodman and that the present DWI prosecution involved matters that were substantially related to the prior DWI prosecution. We concluded that, therefore, Young should have been disqualified. We granted the mandamus petition. Young then took the matter before the

---

[3]At Goodman's trial, assistant county attorneys Jill Drake and William Harris represented the State. If the prosecuting attorney is disqualified because of an actual conflict of interest, all of his or her assistant prosecuting attorneys are also disqualified. *Scarborough v. State*, 54 S.W.3d 419, 424 (Tex. App.—Waco 2001, pet. ref'd).

[4]In the pretrial hearing that resulted in the Goodman mandamus, in support of his position that the prosecutor should be disqualified in this case, Goodman presented affidavits stating (a) that Young had represented Goodman in a previous DWI case, (b) that Goodman had confidentially discussed his drinking habits at length with Young, and (c) that Goodman's drinking habits were an integral part of the prosecution of his current case.

Texas Court of Criminal Appeals, which concluded that the rules requiring Young to disqualify did not have the "indubitable provenance" to justify rendering a mandamus against the trial court.

Thereafter, in a direct appeal of another case involving Young, the Texas Court of Criminal Appeals again addressed the issue of prosecutor disqualification. *See Landers v. State*, 256 S.W.3d 295 (Tex. Crim. App. 2008) (including standard of review and proof needed to disqualify state's attorney in criminal case).

Levels of required proof differ between mandamus cases and direct appeals. *Compare id.* (disqualification issues on direct appeal); *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals*, 236 S.W.3d 207 (Tex. Crim. App. 2007) (disqualification issues on mandamus). On a direct appeal, such as this case, the standard of review for disqualification of the prosecutor by the trial court is whether the court abused its discretion. *Landers*, 256 S.W.3d at 303. Under that analysis, the trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Id.* As in all reviews of a discretionary ruling, when reviewing the historical facts on which the trial court's ruling on a motion to disqualify is based, we are to afford "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Id.* When the defendant contends that the lower court erred in applying the law to the trial court's findings, our review is de novo.

4

Our substantive frame of reference in this case starts with Rule 1.09(a)(3) of the Texas Disciplinary Rules of Professional Conduct. That rule states, "Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client . . . if it is the same[5] or a substantially related matter." TEX. DISCIPLINARY R. PROF'L CONDUCT § 1.09(a)(3). A prosecuting attorney is not, however, automatically disqualified from prosecuting a person whom he or she had previously represented, even when it is for an offense that is substantially related to that for which he or she defended the individual in a prior representation. *Landers*, 256 S.W.3d at 304.

If a prosecutor refuses to step down, the trial court may disqualify the prosecutor only on the basis of a conflict of interest that rises to the level of a due-process violation. *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994). In attempting to apply the law to this type of situation, the Texas Court of Criminal Appeals—recognizing the need to consider the elected nature of the prosecutor's office, not just his or her personal ethical obligations—has stated that a prosecuting attorney

> might well err on the side of caution and voluntarily disqualify himself from representing the State in the criminal prosecution of a former client, but neither trial

---

[5]Both the Texas Legislature and the Texas courts have held that a prosecuting attorney who has formerly represented the defendant in the "same" criminal matter as that currently being prosecuted is statutorily disqualified. When a prosecuting attorney switches sides in the same criminal case, an actual conflict of interest is apparent that constitutes a due-process violation, even without a specific showing of prejudice. This is described as a "hard and fast rule of disqualification." *Landers*, 256 S.W.3d at 304. This appeal is clearly not from the same case.

> nor appellate courts can patrol the outskirts of the possible appearance of impropriety by a duly elected district attorney.

That court concluded that a prosecutor could be disqualified only for a violation of the defendant's due-process rights, not for violations of the Disciplinary Rules of Professional Conduct alone. *Landers*, 256 S.W.3d at 310 (no abuse of discretion in denying defense's motion to disqualify prosecutor who had represented defendant in prior alcohol-related offense that was similar to, but not same, as pending charge); 1 TEXAS CRIMINAL PRACTICE GUIDE § 1.05 (Matthew Bender & Co. ed. July 2009).

*Landers* explained that a due-process violation occurs only when the defendant can establish "actual prejudice," not just the threat of possible prejudice to his rights by virtue of the district attorney's prior representation. Actual prejudice, for example, would occur if the prosecuting attorney previously personally represented the defendant in "a substantially related matter" and in that representation obtained "confidential" information and used it to the defendant's disadvantage.[6] The information provided to the attorney must actually be confidential. *Landers*, 256 S.W.3d at 308.

---

[6]Thus, the disqualification rule as announced by the Texas Court of Criminal Appeals is less strict than that in civil cases—where a private attorney may be disqualified merely on a showing that the attorney had previously represented the adverse party in "a substantially related matter."

*(a)     The Cases Are Substantially Similar, and Confidential Communications Passed Between Goodman and Young in the Earlier Representation*

In our 2006 *Goodman* opinion, we reviewed in great detail the evidence that would be presented at trial and the nature of the confidential information revealed to Young during his prior representation. In that opinion, we made a number of observations from the evidence:

- The conviction in which Young represented Goodman would be used as an enhancement in this case.

- Young had submitted a bill for 8.49 hours of work in the earlier case, listing five separate conferences between the two.

- At the hearing on the motion to disqualify, Goodman testified he was represented by Young in one of the DWI cases being used as a jurisdictional enhancement.

- Goodman also testified that he had disclosed confidential information about himself and the facts of that case, including telling Young of his "alcohol issue." When questioned by the State about the "public record" aspect of his drinking, Goodman pointed out that the number of beers he drank a day was not on public record.

- Goodman also expressed his fear that Young would use those confidential communications—especially those concerning how much he drank on a daily basis—against Goodman during the trial on these charges.

*In re Goodman*, 210 S.W.3d 805, 809 (Tex. App.—Texarkana 2006, no pet.). That evidence is undisputed. Based on that evidence, we previously concluded that the two cases were substantially related and that confidential information[7] had passed between Goodman and Young.

---

[7]The court defined confidential communications as one not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client—or those reasonably necessary for the transmission of the communication. *Landers*, 256 S.W.3d at 309.

The State argues that the matter is not substantially related because "prosecution for the same type of offense did not, by itself, make the two proceedings substantially related." The State bases its argument on language abstracted from *Landers*, taking the position that there is no showing how the "same or inextricably related facts, circumstances or legal questions were at issue in both proceedings." Thus, the State concludes, the two proceedings are not substantially related. We disagree.

The State also asserts that we have acknowledged erroneously finding, in our *Goodman* mandamus opinion, a substantial relationship between the two cases. It bases that argument on our recognition that the Texas Court of Criminal Appeals had found we erred in our mandamus ruling. We disagree with that assertion also. That holding by that court goes no further than to hold that the application of the disqualification rule was not so clear as to be enforceable by mandamus. It does not suggest that our evidentiary observations in that opinion were incorrect. Neither *Landers* nor the opinion of the Texas Court of Criminal Appeals in its review of our *Goodman* mandamus action have thrown our conclusions on those matters into doubt. The mere fact that the Texas Court of Criminal Appeals found mandamus an inappropriate remedy does not imply a holding that those conclusions were incorrect.

We see no reason to retreat from our conclusions on those matters. Neither Goodman nor the State has directed us to any additional evidence that would impact that determination.

*(b)      There Has Been No Showing of Actual Prejudice*

Having determined that Young previously personally represented Goodman in a substantially related matter and received confidential communications from Goodman on the relevant topics, we are now required to move to the other part of the analysis and look for actual prejudice[8]—to see whether the prosecutor used any confidential information to Goodman's disadvantage.

The record of the entire proceeding is before this Court. We thus examine the entirety of the record to determine if actual prejudice has been shown. We note that *Landers*, where the court reviewed a direct appeal, did not describe the analysis as a review for harm. Instead, the court reviewed the actions of the prosecutor, in light of the information the appellant claimed Young had learned during his prior representation (there was none) that might be used against her, in its search for actual prejudice.[9]

Goodman's only real argument is that his due-process rights were violated by (a) requiring him to testify at the pretrial hearing about the precise nature of the communications with Young about the number of beers he drank every day; (b) his inability to call Young as a witness during guilt/innocence, postulating that he might have been called to explain possible flaws in the

---

[8]Goodman cites a series of cases from other jurisdictions (some civil, some criminal) holding that a defendant's due-process rights are violated when his former defense counsel prosecutes him or her in a substantially related case. Those cases are well reasoned and persuasive, but the Texas Court of Criminal Appeals' requirement of actual prejudice is controlling before this Court.

[9]The court did state in a footnote that Young did not cross-examine Landers using information that he had obtained during his representation, but the opinion does not rely in any form on that fact.

enhancement case, or in punishment to explain theft by check charges he managed to get dismissed; (c) the fact that the current prosecutor was the person whose name appeared on court documents as Goodman's previous defense counsel; and (d) animosity between Goodman and Young.

Goodman has directed us to no evidence or testimony that shows he was actually prejudiced as a result of Young's serial representations. Since Goodman can show no prosecutorial act or omission, in this case, springing from any confidences disclosed in the earlier representation, actual prejudice has not been shown.

We overrule this contention of error.

*(2)     The Trial Court Did Not Abuse Its Discretion in Finding that Goodman's Blood Was Tested for Medical Purposes*

Goodman also contends that the trial court erred by allowing into evidence the hospital blood-test results showing his excessive blood-alcohol level. His argument is phrased as a violation of his constitutional right to confrontation and as a violation of Section 724.017 of the Texas Transportation Code.

The general constitutional claim is that he was denied the related right to cross-examine witnesses for the State with regard to the blood testing. Goodman points out that, although there was evidence from an Emergency Medical Services worker that blood was drawn and from a laboratory supervisor that testing was done, the records show only that a call from the laboratory stated the results and that the person who actually did the testing did not testify at trial. Thus, Goodman

10

argues, the admission of the results violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. *See Crawford v. Washington*, 541 U.S. 36 (2004).

To reach that argument, however, the laboratory report must be "testimonial" evidence and thus subject to the Confrontation Clause, as explained in *Crawford*. *Crawford* applies the Confrontation Clause only to *testimonial* statements of absent witnesses. *Id*. at 180.

> These cases require the Court to determine which police "interrogations" produce statements that fall within this prohibition. Without attempting to produce an exhaustive classification of all conceivable statements as either testimonial or nontestimonial, it suffices to decide the present cases to hold that statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U.S. 813 (2006).

Our task, therefore, is to review the trial court's decision on whether the blood-alcohol test was made primarily for the purpose of establishing or proving past events relevant to a later prosecution.

In this case, the State stipulated that there had been a statement made in a discussion between the officers in which one stated that they were going to "take him to the hospital so they could do a blood draw." Were that the entire story, that suggests the report was testimonial in nature.

Officer Mike Ford testified at a suppression hearing, however, that, although Goodman was not transported by ambulance, Ford took him to the hospital because, "I wanted to make sure that

11

he was not injured more severely than . . . I could see, so it was for his well-being and his care." He specifically testified that he did not take him there as part of his investigation and that he did not request that blood be drawn. Kimberly Miller, a nurse who cared for Goodman, testified that his blood was drawn that day for medical care, not at law enforcement request.

An appellate court reviewing the trial court's decision on the admissibility of evidence may reverse it only for an abuse of discretion, i.e., only when the trial court's decision was outside the zone of reasonable disagreement. *Shuffield v. State*, 189 S.W.3d 782, 792 (Tex. Crim. App. 2006). There was evidence cutting both ways. In such a situation, the trial court could reasonably find both that the blood was not drawn at the request of law enforcement and that it was tested for medical purposes. Thus, the court could conclude that the report was not testimonial and that *Crawford* was therefore not implicated. The same conflict in evidence also negates Goodman's contention under the Texas Transportation Code, which allows only certain categories of individuals to draw blood for the purpose of alcohol testing. There is ample evidence to support a conclusion that Goodman's blood was drawn for medical purposes.[10] We find no abuse of discretion.

We overrule this contention of error.

*(3)     Admitting Stewart's Statement to Police Was Not Harmful Error*

Goodman also contends that the trial court improperly admitted hearsay statements by Robin Stewart, as related by Ford, at the trial. The statement, as related by the officer, was given by

---

[10]TEX. TRANSP. CODE ANN. § 724.017 (Vernon Supp. 2009).

12

Stewart to police at the scene of the accident. Goodman complains that the evidence was inadmissible hearsay and that its admission violated his constitutional right to confront Stewart, a witness against him. We hold that admitting the statement was not harmful error because of these conclusions: (a) hearsay was not erroneously admitted, because Stewart's statement was a present-sense impression and Goodman "opened the door" to its admission; and (b) no reversible *Crawford* violation occurred, because Goodman "opened the door" to its admission and it was harmless beyond a reasonable doubt.

It appears that Ford took a written statement from Stewart, that a copy was later e-mailed to her, and that she returned it. The record also shows that, thereafter, police efforts to contact Stewart were uniformly unsuccessful. The gist of Stewart's statement was that she had stopped after seeing the pickup truck run a stop sign, cross a street, and hit a utility pole; that she did not see the driver of the vehicle well enough to identify him; that the second vehicle stopped behind her; and that its occupant got out and followed the person who got out of the pickup truck. The driver of that second vehicle, Darryl Morgan, testified that he had followed Goodman as he attempted to get away from the scene and had directed officers to Goodman's location.

The statement was first brought up by the State by asking whether witness statements were taken. On cross-examination, counsel asked Ford whether Stewart had told him that the person in the vehicle was wearing a white baseball cap. Ford's answer was that he would have to refer to Stewart's statement. Counsel declined that invitation and asked again whether he remembered such

13

a comment. Ford sidestepped, stating that another officer had talked to her more, while Ford was taking care of Goodman.

Goodman's counsel then, however, went on to ask (in the vein of refreshing Ford's memory) if, in her statement, Stewart had told him about the baseball cap. The question was so phrased as a setup for the next series of questions; Goodman was wearing no cap, and none was found. The issue being addressed was whether Goodman was indeed the person who had driven the wrecked truck; there was no direct identification of him behind the wheel of the vehicle.

The State then, on redirect, began delving into the contents of Stewart's statement. At that point, counsel objected on confrontation grounds. After a brief voir dire, counsel again objected, on confrontation grounds and because her statement, as read by the officer, was hearsay.

*(a)*   *Hearsay Was Not Erroneously Admitted, Because Stewart's Statement Was a Present-Sense Impression and Goodman "Opened the Door" to Its Admission*

The State argues that Stewart's statement was admissible, over the hearsay objection, as an excited utterance. We disagree. For the excited-utterance exception to apply, three conditions must be met: (1) the statement must be a product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous and unreflecting, (2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent, and (3) the statement must relate to the circumstances of the occurrence preceding it. *Sellers v. State*, 588 S.W.2d 915, 918 (Tex. Crim. App. [Panel Op.] 1979); *Mumphrey v. State*, 155 S.W.3d 651, 663 (Tex. App.—Texarkana 2005, pet. ref'd); *see Wall v. State*, 184 S.W.3d 730

14

(Tex. Crim. App. 2006) (discussion in testimonial context). The critical factor in determining when a statement is an excited utterance under Rule 803(2) "is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event." *Lawton v. State*, 913 S.W.2d 542, 553 (Tex. Crim. App. 1995) (citing *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). The time elapsed between the occurrence of the event and the utterance is only one factor considered in determining the admissibility of the hearsay statement. *Id.* That the declaration was a response to questions is likewise only one factor to be considered and does not alone render the statement inadmissible. *Id.* The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion rule is within the trial court's discretion. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994); *see* TEX. R. EVID. 801–06.

There is no evidence about the length of time that had elapsed, Stewart's state of mind at the time, or whether she experienced any excitement. This was a minor one-vehicle accident with no apparent injuries or other individuals or automobiles involved. In the absence of any evidence about the context surrounding the statement, we find no support for the State's assertion that this was an excited utterance.

That said, the testimony was still admissible over the hearsay objection as a present-sense impression.[11]  A present-sense impression is a statement describing a condition either while

---

[11]*Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). "If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment."

15

perceiving the condition or event or immediately thereafter. *See* TEX. R. EVID. 803(1). Even on the thin evidence provided of the context in which the statement was taken, it is apparent that it was taken closely in time to the incident, before Stewart left the scene, and the statement described the event and conditions she had observed. We do not reverse a trial court's ruling on the admission of evidence unless that ruling falls outside the zone of reasonable disagreement. *Shuffield*, 189 S.W.3d at 792. Under an abuse of discretion standard, the court's ruling was easily within that zone.

It also appears that the trial court's reason for admitting the testimony is also correct: defense counsel had opened the door to the admission of further testimony from the statement by bringing a portion of its contents before the jury.

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.

TEX. R. EVID. 107.

The difficulty in analyzing this argument lies in the need to determine what is necessary to make the portion brought up by defense counsel fully understood or explained fairly. In this case, as the purpose for defense counsel's questioning about the white ball cap and Stewart's statement was to cast doubt on the identification of Goodman as the driver, the State could legitimately bring in the additional statements to show the remainder of her observations that tended to implicate Goodman

16

as the driver, not just the singular question of whether he was wearing a hat.  The testimony was properly admissible under this theory.

> *(b)*      *No Reversible* Crawford *Violation Occurred, Because Goodman "Opened the Door" to Its Admission and It Was Harmless Beyond a Reasonable Doubt*

Goodman also contends, however, that to allow Stewart's statement into evidence violates his constitutional right to confront the witnesses against him under *Crawford*.  Since we have concluded that Goodman opened the door to the admission of the evidence, no *Crawford* error has been shown.

Even if the door had not been opened, the admission of the evidence was harmless beyond a reasonable doubt.  *See Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006).  Under Rule 44.2(a) of the Texas Rules of Appellate Procedure, we must "calculate, as nearly as possible, the probable impact of [any] error on the jury in light of the other evidence."  *Id.*; *see* TEX. R. APP. P. 44.2(a)  If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt.  As explained by the Texas Court of Criminal Appeals, "if an appellate court rules that a constitutional error in the admission of evidence is harmless, it is, in essence, asserting that the nature of that evidence is such that it could not have affected the jury's deliberations or verdict."  *Id.*

Stewart's statement was cumulative of testimony from the citizen who chased Goodman down and the testimony of the officer.  It provided nothing new and little to no explanation of

anything involved in the incident. It was, at most, a rather dry summary. The statement itself was not read to the jury; the officer merely hit the highlights.

The testimony consisted of perhaps three pages, most of which was discussion between counsel and rulings by the trial court. It is not emotionally charged, it is not detailed; in fact, it provides nothing beyond that already properly admitted as evidence.

We conclude that any error is harmless beyond a reasonable doubt.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

CONCURRING OPINION

The Texas Court of Criminal Appeals has held that a due-process violation is shown in this setting

> when the defendant can establish "actual prejudice," not just the threat of possible prejudice to his rights by virtue of the district attorney's prior representation. Actual prejudice would occur, for example, if:
>
> 1. the prosecuting attorney has previously personally represented the defendant in "a substantially related matter"; and
>
> 2. the prosecuting attorney obtained "confidential" information by virtue of that prior representation which was used to the defendant's disadvantage.

*Landers v. State*, 256 S.W.3d 295, 305 (Tex. Crim. App. 2008).

We have found that the prosecutor previously represented Leslie Gene Goodman in a substantially related matter and obtained confidential information by virtue of that prior representation. The only remaining matter is whether the confidential information was used to the defendant's disadvantage. If one must prove the prosecutor actually presented in open court during the trial evidence that demonstrates the use of a confidential communication, there will be no prosecutorial disqualifications in the State of Texas. It would take a particularly dull prosecutor to place into the trial record evidence demonstrating that he or she "used" the confidential information. Lawyers, including prosecuting attorneys, "use" information in a myriad of ways—most of which do not find their way into the trial record.

First, a prosecuting attorney has an enormous amount of discretion about which cases to pursue and uses whatever information, from whatever source, to make such prosecutorial decisions. If an indictment is filed, judgments about guilty pleas and the terms thereof allow a prosecutor to use whatever knowledge or information obtained by any source, including confidential information from a previous client. During the selection of a jury, lawyers routinely use information acquired by their own experiences, conversations, or possibly confidential communications. During the course of the trial, the prosecutor may use information, known only to the prosecutor, to prompt a line of direct or cross-examination. Witnesses may be found based on personal or confidential information. This is only a small number of the many ways lawyers might use confidential information in trial

19

prosecution to a defendant's disadvantage. Needless to say, none of this will be reflected in the trial record.

The point is that requiring actual proof in the record that such confidential information is "used to the disadvantage of the defendant" is virtually an impossible burden. In this case, we have found that Goodman has not directed us to "evidence or testimony" that shows he was actually prejudiced by the prosecutor's previous representation of him. That burden of proof is not required in Texas civil cases where the stakes only involve money or property, but in criminal cases, where personal liberty is involved, we now require far greater proof for disqualification of the state attorney.[12] It is true that prosecuting attorneys are elected officials, but a prosecutor is first an attorney subject to the same rules of conduct as all other attorneys and duty bound to uphold the integrity of legal proceedings. The rationale for the distinction between civil and criminal cases in Texas is that in civil cases, there is no necessity to prove that a due process violation occurred. *State ex rel. Young v. Sixth Judicial Dist. Court of Appeals at Texarkana*, 236 S.W.3d 207, 213 (Tex. Crim. App. 2007) ("But there is no requirement in the civil context that the failure to disqualify counsel must rise to the level of a due-process violation."). Unquestionably, when a due process

---

[12]The Texas Supreme Court has held in civil cases that disqualification of counsel may only occur when "the matters embraced within the pending suit are substantially related to the factual matters involved in the previous suit . . . . Sustaining this burden requires evidence of specific similarities capable of being recited in the disqualification order. If this burden can be met, the moving party is entitled to a conclusive presumption that confidences and secrets were imparted to the former attorney." *NCNB Tex. Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989) (citations omitted).

20

violation is demonstrated, the prosecutor must be disqualified and error is apparent, but that does not necessarily lead to the conclusion that a due process violation is the only instance in which a prosecutor should be disqualified. The requirement to prove a due process violation is one we have chosen to impose in Texas criminal cases even though that burden is not required in Texas civil cases or in criminal cases in several other states.

In *Reaves v. State*, 574 So. 2d 105, 107 (Fla. 1991), the Florida Supreme Court held that a conviction must be reversed if the trial court denies a pretrial defense motion to disqualify a prosecutor who previously has represented the defendant in any criminal matter that involved or likely involved confidential communications with the same client.

The Supreme Court of Washington in *State v. Stenger*, 760 P.2d 357 (Wash. 1988), held that the prosecuting attorney's prior representation of a first degree murder defendant in unrelated criminal matters while the attorney was in private practice required disqualification of the attorney from participation in this death penalty murder prosecution, where the defendant had confided uncharged crimes, drug use, and anti-social behavior to the attorney during the prior representation. The court concluded that there were matters which could influence the attorney's discretion to seek the death penalty.

The Arizona Supreme Court disciplined an attorney who formerly represented the defendant in three DUI cases and then prosecuted him in another DUI case. According to the court, the attorney's conduct in prosecuting his former client created a substantial danger that confidential

21

information revealed in the course of the attorney-client relationship would be used against the client by his former attorney. *In re Ockrassa*, 799 P.2d 1350 (Ariz.1990).

Other cases involved the same difficulty as presented here—the prosecuting attorney represented the defendant in prior cases wherein the defendant was convicted and those convictions are used to enhance punishment in the present case. The Indiana Supreme Court considered the enhancement allegations to be substantially related to the present prosecution and noted "that even though the defendant's prior convictions were a matter of public record, it could not be said "without speculation that the prosecutor's knowledge of these prior cases will not actually result in prejudice to defendant." *State v. Tippecanoe County Court*, 432 N.E.2d 1377, 1379 (Ind.1982); *see also State ex rel. Keenan v. Hatcher*, 557 S.E.2d 361, 370 (W. Va. 2001) ("[T]he circumstance we face here, where the prosecutor represented the defendant in connection with the predicate convictions, simply raises too great a danger that a client's confidences may be betrayed. The Court therefore holds that a prosecutor is disqualified from representing the State in a recidivist proceeding . . . where such lawyer acted as defense counsel in connection with the prior felony convictions that are the basis for such proceeding.").[13]

We cannot expect a system of justice that is perfect and at all times achieves a just result. But the machinery of our criminal justice system should be structured, as much as is reasonably possible, to accomplish that goal. One of the ingredients of justice is that the trial "must satisfy the

---

[13]Admittedly, Texas is not the only state to require a showing of a due process violation. *See Landers*, 256 S.W.3d 295 (summarizing other jurisdictions with similar holdings).

appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). Requiring a high standard of conduct for the administrators of our judicial system is a small price to pay to achieve justice.

With these comments, but also recognizing controlling precedent, I concur with the majority opinion.


Jack Carter
Justice

Date Submitted:    September 16, 2009
Date Decided:      December 1, 2009

Publish