**Opinion filed August 9, 2018**



## In The

# Eleventh Court of Appeals

_____

## No. 11-15-00323-CR

_____

## CARROLL CARPENTER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-43,463**

### M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Carroll Carpenter, of the offense of felony murder (Count I), with the underlying felony being driving while intoxicated, and the offense of intoxication manslaughter (Count II). *See* TEX. PENAL CODE ANN. §§ 19.02(b)(3), 49.08 (West 2011). The jury assessed Appellant's punishment at confinement for twenty-eight years and thirteen years, respectively, and the trial

court sentenced Appellant accordingly. Subsequently, however, but while it still had plenary power, the trial court vacated Appellant's conviction and sentence for intoxication manslaughter based upon double jeopardy grounds. We affirm.

On appeal, Appellant presents four issues for review. In his first issue, Appellant argues that the introduction of medical records violated the Confrontation Clause of the Sixth Amendment. In his second issue, Appellant contends that the trial court abused its discretion when it admitted prejudicial, post-exhumation autopsy photographs into evidence. In his third issue, Appellant contends that the trial court abused its discretion when it admitted testimony and other evidence related to the death of a victim who was not named in the indictment. In his final issue, Appellant raises a double jeopardy complaint.

Appellant's conviction for felony murder arises from a collision at the intersection of West Loop 338 and 8th Street in Ector County. Appellant was driving southbound on the loop in a red Dodge pickup when he hit the side of a white Ford Ranger pickup that was headed east on 8th Street. The white pickup was being driven by Ruben Gandara. Gandara's wife, Paula Sanchez, was with him. Both Gandara and Sanchez died at the scene. Appellant complained of chest pain and was taken to the hospital. A grand jury eventually indicted Appellant for the offenses of felony murder and intoxication manslaughter with respect to Sanchez's death.

Although there were eyewitnesses to the collision, there were discrepancies as to which of the two pickups ran a red light at the intersection. What was clear, however, was that Appellant was intoxicated and speeding at the time of the accident. The speedometer in Appellant's pickup was frozen at 73.5 miles per hour after the wreck, and the DPS crash investigation indicated that Appellant was driving between 79 and 83 miles per hour at the time of the wreck, which was well above

the posted speed limit of 55 miles per hour. Various witnesses noticed the smell of alcohol emanating from Appellant's breath. Appellant had Budweiser boxes and cans in the cab and in the bed of his pickup. Appellant's blood was tested at the hospital lab and also at a DPS lab. The hospital test revealed a blood alcohol level of 0.165, and the DPS test revealed a blood alcohol level of 0.142. The blood drawn for the DPS was drawn forty-four minutes after the blood drawn for the hospital. Appellant stipulated at trial that he had two prior convictions for driving while intoxicated.

In his first issue, Appellant complains of the admission of his medical records, particularly the lab report that contained the result of the blood test performed at the hospital, because the chemist who performed the analysis of Appellant's blood did not testify at trial. The record reveals that Appellant objected at trial to the admission of the medical records, in particular the lab report contained within those records. Appellant objected at trial and contends on appeal that the admission of the hospital's lab report violated his right to confront the witnesses against him. *See* U.S. CONST. amend. VI (Confrontation Clause).

Under the Confrontation Clause, an accused has the right to be confronted with the witnesses against him. *Id.* The Supreme Court has determined that, where an out-of-court statement is testimonial in nature, the Confrontation Clause demands that the declarant be unavailable and that the defendant have had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *see Bullcoming v. New Mexico*, 564 U.S. 647, 651, 657 (2011) (holding that the Confrontation Clause prohibited the admission of a forensic lab report that contained a testimonial certification about the defendant's blood alcohol concentration where the sponsoring witness did not sign, perform, or observe the test).

3

The question in the present case is whether the lab report contained in Appellant's medical records was "testimonial" in nature. The Supreme Court in *Crawford* did not define the term "testimonial." 541 U.S. at 68. The Supreme Court subsequently noted, however, that "medical reports created for treatment purposes . . . would not be testimonial under our decision today." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 312 n.2 (2009). In the present case, the doctor that treated Appellant after the wreck testified at trial that Appellant arrived at the emergency department in an ambulance, that he was on a back board and had a neck collar on, and that his blood was drawn and tested for medical reasons. Because the blood test performed at the hospital was conducted for treatment purposes, the hospital's lab report was nontestimonial and admissible even in the absence of the testimony of the technician that performed the analysis. *See Sanders v. State*, No. 05-12-01186-CR, 2014 WL 1627320, at *4 (Tex. App.—Dallas Apr. 23, 2014, pet. ref'd) (not designated for publication); *Goodman v. State*, 302 S.W.3d 462, 470–71 (Tex. App.—Texarkana 2009, pet. ref'd). We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court abused its discretion when, during the guilt/innocence phase of trial, it admitted into evidence several photographs that were taken at the time of the autopsies of Gandara and Sanchez. Appellant argues that the probative value of the photos was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403 (providing that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence"). We note that the authorities did not order autopsies until more than three months after the victims' deaths. Therefore, the autopsy photographs that were admitted into evidence were post-exhumation

photos. When initially shown the autopsy photos outside the presence of the jury, the trial judge stated: "Goodness gracious. I don't know what benefit this has Mr. Bland [the prosecutor]." The prosecutor explained his purported need for the photos, and Appellant offered to stipulate to facts related thereto. The trial court initially ruled that the autopsy photos were not going to be admitted into evidence because they were "so over the top." The trial court subsequently revisited the matter when the State called the medical examiner to testify. The State offered into evidence five autopsy photos of Sanchez and six autopsy photos of Gandara. These post-exhumation autopsy photos are color photos and, as noted by the trial court, are "certainly gruesome." Appellant reurged his Rule 403 objection and offered to stipulate to the injuries and the cause of the death. Nevertheless, at the prosecutor's insistence, the trial court allowed the autopsy photos into evidence.

Photographs depicting matters described by admissible testimony are generally admissible but may be rendered inadmissible "if the emotional and prejudicial aspects substantially outweigh the helpful aspects" of the photos. *Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004). When a defendant objects to the introduction of photographic evidence on the basis of Rule 403 or unfair prejudice, the trial court must conduct a balancing test and must consider (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Id.* at 489 (citing *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991)). Courts should also consider the number of photographs, their size and color, and their gruesomeness, along with factors such as whether any bodies are clothed or naked and whether a body has been altered by autopsy. *Id.*

We hold that the trial court abused its discretion in admitting the post-exhumation autopsy photos into evidence over Appellant's Rule 403 objection. *See, e.g.*, *Prible v. State*, 175 S.W.3d 724, 735–36 (Tex. Crim. App. 2005). First, the probative value of the autopsy photos was minimal. Appellant was on trial for felony murder, with the underlying felony of driving while intoxicated, and for intoxication manslaughter. Thus, the State was not required to prove the particular manner of Sanchez's death, and Appellant was not even on trial for Gandara's death. Second, the gruesome nature of the post-exhumation photos had the potential to impress the jury in an irrational way. Third, other than two discussions and questioning of the medical examiner outside the jury's presence, it does not appear from the record that an inordinate amount of time was needed to develop the evidence with respect to the autopsy photos. Fourth, the State had little need for the autopsy photos. Other pictures of the victims' dead bodies were taken at the scene of the collision and were admitted into evidence at trial, and Appellant offered to stipulate to the injuries and the cause of death. That the collision caused the deaths of Gandara and Sanchez was clear from the testimony of the witnesses at the scene and obvious from the photos of the victims' bodies while still inside their pickup.

Having determined that the trial court abused its discretion in admitting the photos, we must now determine whether the error was harmless. *Id.* at 737. Error in the admission of evidence must be disregarded unless the error affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b). When an appellate court applies Rule 44.2(b), it must disregard a nonconstitutional error unless the error affects the appellant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). An appellate court should not overturn a criminal conviction for nonconstitutional error "if the appellate court, after examining the record as a whole,

has fair assurance that the error did not influence the jury, or influenced the jury only slightly." *Id.* (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)). Appellate review of the record as a whole should include the following:

> [A]ny testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

In this case, when the medical examiner testified about the autopsies and the autopsy photos, he explained to the jury that the bodies had been buried for a few months and that the photos therefore reflected "a little bit beyond" "moderate decomposition." He also explained that some of the damage to the bodies occurred postmortem and that some of the injuries may have been caused by the embalming process. The autopsy photos were not a major focus of the trial. The defensive theory seemed to be that Gandara ran a red light and caused the wreck and, thus, that Appellant did not cause the wreck or Sanchez's death. Furthermore, the State did not emphasize the autopsy photos, nor did it mention those photos during voir dire or closing argument. Based upon our review of the record as a whole, we conclude that the error in the admission of the autopsy photos did not affect Appellant's substantial rights. *See, e.g.*, *Prible*, 175 S.W.3d at 737. Accordingly, we overrule his second issue on appeal.

In his third issue, Appellant contends that the trial court abused its discretion when, during the guilt/innocence phase of trial, it admitted evidence related to Gandara and his death, as Gandara was not named as a victim in the indictment.

Appellant argues that the admission of evidence related to Gandara was inadmissible as it was irrelevant to the indicted offenses. *See* TEX. R. EVID. 401. We disagree.

Where "crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction," evidence of the other crime may be admissible. *Prible*, 175 S.W.3d at 731 (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). The jury is entitled to know all of the "relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum." *Id.* at 732 (quoting *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)). Here, evidence of Gandara and his death was relevant to the offenses charged. Gandara was driving the pickup in which Sanchez was a passenger. Moreover, much of the debate at trial was over which of the two drivers ran a red light. It would have been difficult, if not impossible, to try the case with no mention of Gandara at the guilt/innocence phase of trial. The trial court was well within its discretion in admitting evidence related to Gandara. We hold that the trial court did not abuse its discretion when it admitted evidence—other than the autopsy photos, which we addressed in Appellant's second issue—related to Gandara. We overrule Appellant's third issue.

In his fourth issue, Appellant asserts that his convictions—for felony murder and intoxication manslaughter—violate the Double Jeopardy Clause of the Fifth Amendment. *See* U.S. CONST. amend. V. The State concedes, and we agree, that Appellant is correct with respect to this issue. *See Bigon v. State*, 252 S.W.3d 360, 369–72 (Tex. Crim. App. 2008). The State points out that the trial court also agreed and has already entered an order to that effect. While it still had plenary power to act, the trial court entered an order on Appellant's motion to vacate sentence. The trial court granted Appellant's motion on double jeopardy grounds and ordered as

follows: "The sentence and conviction for intoxication manslaughter is hereby vacated." Because the trial court has already resolved this matter and ruled in Appellant's favor, Appellant's fourth issue is moot. The judgment of conviction for the offense of intoxication manslaughter, as charged against Appellant in Count II, remains vacated.

We affirm the judgment of the trial court as to Count I.


JIM R. WRIGHT
SENIOR CHIEF JUSTICE


August 9, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.